**Warren VANSKIKE, Appellee,**

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation, and Burlington Northern Railroad Company, a corporation, Appellants.**

**Nos. 82–2526, 82–2542.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1983.

Decided Jan. 16, 1984.

**1148**

James F. Duncan, Daniel Bukovac, Kansas City, Mo., for appellant Union Pacific R. Co.; Watson, Ess, Marshall & Enggas, Kansas City, Mo., of counsel.

Thomas Strong, Mathew W. Placzek, John Wooddell, Strong, Placzek & Wooddell, P.C., Springfield, Mo., for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

This is the second time that the case of Warren Vanskike has been before this court.[1] In this second appeal, defendants Union Pacific Railroad Company (Union Pacific) and Burlington Northern Railroad Company (Burlington Northern) appeal from a judgment for plaintiff Warren Vanskike entered by the district court[2] following a jury verdict. Union Pacific and Burlington Northern appeal from the district court's denial of their post-trial motions for a new trial or, in the alternative, for a remittitur. Burlington Northern is the successor-in-interest to one of the original defendants, St. Louis-San Francisco Railroad Company (Frisco). We affirm the district court.

Warren Vanskike suffered injuries while he was hitching a semitrailer to a piggyback railroad flatcar owned by Union Pacific and in the possession of Frisco. One of two hitches manufactured by ACF Industries, Inc. (ACF) collapsed, crushing Warren's left arm between two vertical struts of the hitch. As a result, Warren's left arm was amputated between the shoulder and the elbow.

Plaintiff Warren Vanskike brought suit against ACF, Union Pacific and Frisco for damages. His wife Lucille brought an action on her own behalf for loss of consortium she sustained as a result of Warren's injuries. The two cases were consolidated for trial.

At trial, plaintiff proceeded on a theory of products liability against defendants ACF and Union Pacific. The action against Frisco was brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. section 51 et seq. Cross-claims against each of the railroads and by each of the railroads against ACF were also tried. The jury returned a verdict of $903,000 for Warren Vanskike against all defendants and further allocated the verdict: 30% to ACF, 30% to Union Pacific, and 40% to Frisco. Lucille Vanskike was awarded the sum of $1,000 against defendants ACF and Union Pacific.

All defendants appealed from the verdict. Plaintiffs cross-appealed, arguing that their claim for punitive damages had been improperly rejected by the trial court. This court affirmed the denial of the punitive damages claim and affirmed on all other issues with respect to Lucille Vanskike. With respect to Warren Vanskike, however, we affirmed on the issue of liability and reversed and remanded to the district court for a new trial on only the damages issue. Prior to retrial, defendant ACF settled with plaintiffs and was dismissed from the lawsuit.

---

* The Honorable Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

1. Our first opinion in this matter is found in *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188

(8th Cir.1981), *cert. denied* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

2. The Honorable William R. Collinson, Senior District Judge, Western District of Missouri.

On retrial, the jury returned a verdict of $1,811,177.00 for Warren Vanskike. Using the apportionment from the first verdict, the district court entered judgment against Burlington Northern in the amount of $724,470.80 (40%) and against Union Pacific in the amount of $543,353.10 (30%).[3] Both defendants now appeal the verdict on the grounds that the plaintiff's counsel used improper closing argument which created bias and prejudice and resulted in a grossly excessive verdict. Union Pacific appeals the trial court's ruling limiting the cross-examination of plaintiff's expert witness. Burlington Northern appeals the trial court's ruling that evidence of plaintiff's contributory negligence was inadmissible at the second trial.

## I. Propriety of Closing Argument and Excessiveness of Verdict.

Union Pacific and Burlington Northern urge that the district court erred in denying their motion for a new trial or, in the alternative, for a remittitur. Defendants argue that plaintiff's counsel used inflammatory statements in his closing argument. These remarks, they contend, caused bias and prejudice in the minds of the jury and resulted in a grossly excessive verdict for the plaintiff.

■ Closing arguments are made under the direct control of the trial court. Argument of counsel is a procedural question to be determined by federal law. *Illinois Central Railroad v. Staples*, 272 F.2d 829 (8th Cir.1959). Under federal law, considerable discretion is given to the trial court to control arguments. *Yeargain v. National Dairy Products Corp.*, 317 F.2d 779 (8th Cir.1963). The standard of review on appeal is clear. "The district court is in a better position to determine whether prejudice has resulted from a closing argument and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion." *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188 (8th Cir.1981),

quoting *McDonald v. United Airlines, Inc.*, 365 F.2d 593 (10th Cir.1966).

■ To constitute reversible error, statements made in oral arguments must be plainly unwarranted and clearly injurious. *Homan v. United States*, 279 F.2d 767 (8th Cir.1960). After reviewing the record, this court finds no statements so prejudicial as to require reversal in this case. While the court does find oratorical exaggeration and provocative remarks in the closing arguments of counsel for both plaintiff and defendants, there is nothing in the record which strikes this court as plainly unwarranted or completely beyond the province of counsel in attempting to impress certain views on the minds of the jury. This court holds the fundamental belief that jurors are intelligent, discerning people and that they can usually sort out emotional and passionate arguments and follow what the court tells them to do.

■ Under the standards set out above, defendants must show that the statements are unwarranted and make a concrete showing of prejudice resulting from the argument. Defendants urge that an excessive jury verdict constitutes a showing of prejudice in this case. The test on appeal is whether the verdict "is so grossly excessive as to shock the conscience of this court." *Drotzmanns, Inc. v. McGraw-Hill, Inc.*, 500 F.2d 830, 835 (8th Cir.1974).

■ The trial court has an opportunity to set aside a verdict or to order a remittitur if, in the opinion of the court, the jury has exceeded the limits of fair and reasonable compensation. Therefore, in reviewing a jury verdict on the grounds of excessiveness, this court has consistently applied the following standard:

> (E)xcessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards, ... we

---

**3.** The district court concluded that the settlement with ACF should represent 30% of the verdict.

shall continue to consider review ... not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result. *Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–448 (8th Cir.), *cert. denied,* 368 U.S. 929 [82 S.Ct. 366, 7 L.Ed.2d 192] (1961).

 Appellants have cited numerous cases in which jury verdicts for similar injuries were less than $1.8 million and yet were deemed "excessive." Conversely, cases cited by appellee illustrate damage awards which are higher but are held to be "not excessive." Such comparisons are not greatly helpful because each case must be evaluated as an individual one, within the framework of its distinctive facts. *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713 (8th Cir.1976).

 Assessment of damages is within the sound discretion of the jury. Each case is evaluated by a different, randomly selected group of individual jurors.

(W)e must expect substantial disparities among juries as to what constitutes adequate compensation for certain types of pain and suffering. This is a litigious fact of life of which counsel, clients and insurance carriers are fully aware. Once they place their fate in the hands of a jury, then they should be prepared for the result.... They cannot expect the Court to extricate them in all cases where the award is higher or lower than hoped for or anticipated. *Taken Alive v. Litzau,* 551 F.2d 196 (8th Cir.1977), *quoting Mainelli v. Haberstroh,* 237 F.Supp. 190, 194 (M.D.Pa.1964), *aff'd* 344 F.2d 965 (3rd Cir.1965).

 The retrial on the issue of damages lasted for two weeks. The jury and the trial court heard exhaustive testimony on the nature and extent of Warren Vanskike's injuries. The record shows that Warren was fully conscious during the forty-five minute period it took to free his arm from the collapsed hitch. He underwent several subsequent surgeries for amputation and stump repair. He suffered extensive psychological and emotional problems. Warren continues to experience severe pain from resulting neuromas and phantom sensations. An appellate court should be extremely hesitant to overturn a verdict which includes damages for pain and suffering. *Taken Alive v. Litzau, supra.*

 This court notes that the verdict for the plaintiff on retrial was approximately twice the recovery in the first trial. Yet, under the facts presented at the second trial, the verdict is not grossly excessive. The trial court stated in its order[4]

(T)he plaintiff's evidence of damages was much more significant and extensive at this second trial because of many events which had occurred between the two trials. For example, at the time of the first trial, the plaintiff had been fitted with a prosthesis which he was attempting to learn to use and wear and which he testified was so painful that he could not wear it for any extended period of time. Defendants' counsel intimated strongly in that trial that he was malingering and that many other people who had lost an arm had successfully worn a prosthesis and been able to use it. At the second trial, it was established by irrefutable medical evidence that it was absolutely impossible for this plaintiff to wear the artificial arm and this Court feels that his undisputed fact, plus the constant pain and twitching of the stump of the arm, enhanced the plaintiff's damages award.

The jury and the trial court heard the testimony and assessed the credibility of the witnesses offering it. After reviewing the facts as they appear in the record, we cannot say that the trial court abused its discretion in refusing to grant defendants' motion for a new trial or, in the alternative, for a remittitur.

 Further, this court is aware of its duty to refer to the law of the forum state when determining the inadequacy or excessiveness of a jury verdict. *Block v. R.H.*

---

4. *Vanskike v. Union Pacific Railroad Co.,* Order Denying Motion for a New Trial, Nov. 18, 1982.

*Macy & Co., Inc.,* 712 F.2d 1241 (8th Cir. 1983); *Hysell v. Iowa Public Service Co.,* 559 F.2d 468 (8th Cir.1977). The damage award may not exceed "that which could be sustained before the highest court of the state whose substantive law gives rise to the claim." *Id.* at 472.

The parties agree that Missouri law controls. After a careful review of Missouri damage awards[5] and in light of the evidence presented at retrial, this court is unable to say that an award of $1,811,177.00 is excessive as a matter of law.

## II. *Limitation of Cross-examination on Issue of Termination of SSI Payments.*

Plaintiff called Dr. Clifford Whipple, a psychologist, as an expert witness. Dr. Whipple had examined Warren Vanskike on six separate occasions: three times in 1979, in November, 1981, and on July 8 and July 20, 1982. The controversy arises out of interview notes made by Dr. Whipple during his July 8, 1982, interview with Warren.

Dr. Whipple testified on direct examination that Warren was suffering "disabling post-traumatic stress disorder" and was "unemployable." Dr. Whipple stated that, in his opinion, Warren's lowered self-esteem, depression and psychological problems were directly caused by Warren's loss of his dominant arm. He further testified that in his professional opinion, Warren suffered sufficient depression to be a real suicidal risk at the time of the 1979 examinations.[6]

Warren was notified in October, 1981, that his Social Security (SSI) payments would be terminated on January 1, 1982.[7] Therefore, Dr. Whipple's post-1979 evalua-

tions of Warren all occurred after notification of the cut or during the time period in which Warren's benefits were not being paid. At the July 8, 1982, examination, Dr. Whipple recorded the following in his interview notes:

> Hearing on Social Security will be held Friday, July 9th. Feels got the shaft for Social Security. Cannot understand why he was cut off. Don't think it was fair. Really got depressed when Social Security cut. This was my main—only source of income for me! I had no income to support my family—could not live on what wife made.

Prior to trial, the district court had granted plaintiff's motion in limine to suppress testimony concerning social security and collateral source payments and further to suppress all evidence that in December, 1981, the Social Security Administration had terminated Warren Vanskike's SSI benefits. Plaintiff's counsel instructed Dr. Whipple on the substance of the motion in limine.

Following Dr. Whipple's direct testimony, defendants made an offer of proof concerning cross-examination of Dr. Whipple on the notes he had made during the July 8th interview. Defendants' offer was made for the purpose of impeaching Dr. Whipple's testimony by prior inconsistent testimony and to establish the causation of Warren's depression.[8] In their offer of proof, defendants offered no testimony as to what Dr. Whipple would say if questioned about the effects of the cut in SSI payments on Warren's depression. Plaintiff's attorney, however, stated on the record that the expert's testimony on the causation of Warren's de-

---

5. The cases cited are generally not recent cases. The court has, however, noted the verdict sustained in *Bender v. Burlington Northern Railroad,* 654 S.W.2d 194 (Mo.App.1983).

6. "(A)t the time in 1979, it was my professional opinion that Mr. Vanskike was a suicidal risk, that there were enough indicators here, enough depression present that he was a real suicidal risk." Tr. at 421.

7. Plaintiff's payments were terminated January 1, 1982, for approximately eight months. The

record indicates they were restored in late July or early August, 1982.

8. It does not appear from the record that Dr. Whipple's testimony was inconsistent with the handwritten July 8th notes. Dr. Whipple was merely recording what plaintiff had said, not stating his own diagnoses of the cause of Warren's depression. Further, as noted above, the record holds ample testimony that Dr. Whipple found evidence of serious depression in 1979, prior to any notice concerning SSI payments.

pression would not change and that Dr. Whipple did not consider the SSI cut greatly significant.

Consistent with its ruling on the motion in limine, the trial court denied defendants' offer of proof and ruled that cross-examination on the issue of termination of SSI benefits was inadmissible. We affirm the trial court's ruling.

Prior to the first Vanskike trial, plaintiffs had filed a motion in limine to suppress all evidence of disability payments. The district court granted the motion and stated that defendants could not introduce evidence of collateral source payments because, even if relevant, the probative value would be outweighed by the prejudice which would result. Defendants appealed. This court upheld the trial court's ruling based on the strict evidentiary standard in FELA cases set out in *Eichel v. New York Central RR,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) (per curiam).

In *Eichel,* defendant sought to introduce evidence of payment of a disability benefit to impeach the testimony of the plaintiff as to his motive for not returning to work and as to the permanence of his injuries. The district court excluded the evidence and the Court of Appeals for the Second Circuit reversed. The Supreme Court balanced the probative value of the evidence against the danger of undue prejudice and concluded that "the likelihood of misuse by the jury clearly outweighs the value of this evidence." *Id.* at 255, 84 S.Ct. at 317. Various circuit courts have applied *Eichel* and held that "the discretion normally available to admit all relevant evidence of collateral benefits is greatly limited in FELA cases." *Sheehy v. Southern Pacific Transportation Co.,* 631 F.2d 649 (9th Cir.1980).

This court applied the holding in *Eichel* to the facts of this FELA case and held in the first appeal that "(N)ot only were the collateral source payments inadmissible *per se,*

but also the district court's rulings were correct on the basis of relevancy." *Vanskike v. ACF Industries, Inc.,* 665 F.2d 188, 200 (8th Cir.1981).

■ The evidence sought to be introduced at the second trial did not differ substantially from the evidence sought to be introduced at the first. The trial court did not commit reversible error in limiting the cross-examination of Dr. Whipple, plaintiff's psychologist, on the matter of termination of plaintiff's SSI benefits. *See* Fed.R.Evid. 403.

### III. *Contributory Negligence.*

Defendants appeal from the district court's order denying admission of evidence of plaintiff Warren Vanskike's contributory negligence. This court holds that the case of *Norfolk Southern RR Co. v. Ferebee,*[9] 238 U.S. 269, 35 S.Ct. 781, 59 L.Ed. 1303 (1915), is dispositive of this issue.

■ In the first Vanskike trial, the jury returned a special verdict finding Warren Vanskike not guilty of contributory negligence. Burlington Northern argues that the damages and contributory negligence issues are so closely interwoven in FELA cases that defendants should have been permitted to consider Warren's conduct at the time of his injury in the second trial on damages. This court, however, has already ruled that in this case "the liability and damages issues are sufficiently separable." *Vanskike v. ACF Industries, Inc.,* 665 F.2d 188, 210 (8th Cir.1981). The district court properly denied Burlington Northern's request to admit evidence of plaintiff's contributory negligence.

In accord with this opinion, the judgment and the order of the district court are hereby affirmed.

9. In *Norfolk,* the jury returned a special verdict finding the railroad negligent and the plaintiff not guilty of contributory negligence. The defendant appealed. The appellate court ordered a new trial on the damages issue only. On appeal from the second trial, the Supreme Court held that the trial court had not erred in refusing to re-try the issue of contributory negligence.