933 F.2d 1378
 Prod.Liab.Rep.(CCH)P 12,917
Walter H. LOCKLEY, Appellee,
v.
DEERE & COMPANY, a/k/a John Deere Company, Appellant,
v.
Cecil Wayne LOCKLEY, Appellee.
Judy A. LOCKLEY, Appellee,
v.
DEERE & COMPANY, a/k/a John Deere Company, Appellant,
v.
Cecil Wayne LOCKLEY, Appellee.
Walter H. LOCKLEY, Appellant,
v.
DEERE & COMPANY, a/k/a John Deere Company, Appellee,
v.
Cecil Wayne LOCKLEY.
Judy A. LOCKLEY, Appellant,
v.
DEERE & COMPANY, a/k/a John Deere Company, Appellee,
v.
Cecil Wayne LOCKLEY.
 Nos. 89-2614, 89-2701.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1990.
Decided May 13, 1991.
Rehearing and Rehearing En Banc Denied May 14, 1991.
Rehearing Denied June 20, 1991.
 
 M. Samuel Jones, III, Little Rock, Ark., for appellant.
 Jefferson D. Sellers, Sapulpa, Okl., for appellees.
 ORDER
 On the Court's own motion the opinion and judgment filed March 21, 1991, is vacated.
 Order Entered at the Direction of the Court.
 Before LAY, Chief Judge, and MAGILL and BEAM, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 This is a strict products liability case in which the defendant, Deere & Company (Deere), appeals from a judgment entered on a jury verdict for plaintiff Walter Lockley, an Arkansas farmer whose right hand was injured when it was caught in the vertical unloading auger of a combine manufactured by Deere. Deere's chief contention is that the district court[1] erred in denying its motion for judgment notwithstanding the verdict because the combine presented an open and obvious danger and therefore was not unreasonably dangerous as a matter of law. Deere also contends that the court should have granted its motion for a new trial due to the erroneous admission of evidence relevant only to punitive damages and the failure of the court's cautionary instruction to cure the resulting prejudice. Deere argues further that other jury instructions were faulty, the court erred in the way it submitted the case to the jury, and plaintiffs' counsel made an improper closing argument. Walter Lockley and his wife Judy Lockley (the Lockleys) cross-appeal from the district court's grant of a directed verdict in favor of Deere on their punitive damages claim and from the jury's verdict awarding Judy Lockley zero damages on her loss of consortium claim. We affirm the district court in all respects.
 
 I.
 
 2
 In February 1981, Walter Lockley and his brother Cecil, who farm together in Arkansas, purchased a Titan series combine manufactured by Deere in December 1980, taking delivery of the machine in May 1981. The combine had to be cleaned out periodically to remove grain that accumulated in the sump and at the lower end of the vertical unloading auger. The Lockley brothers found that the only way to accomplish this effectively was to remove the lower cleanout door, a small steel plate located near the bottom of the vertical unloading auger housing, and then insert one's hand or arm into the opening to scoop out the residue grain. They also found that it was necessary to engage the auger briefly to dislodge the grain remaining inside the sump and force it down to the auger floor where it could be scooped out by hand. Since the auger had to be engaged several times to release all of the excess grain, the Lockley brothers routinely left the combine's engine running during the cleaning process.
 
 
 3
 On the evening of December 9, 1983, after having used the combine to harvest soybeans, the brothers set about the task of cleaning out the machine before placing it in storage. Walter removed the cleanout door, reached into the vertical unloading auger housing, and began scooping out soybeans into a bucket. Cecil was standing on the platform next to the combine's cab where he could reach the auger lever. Because a person in this position could not see the lower cleanout door, the brothers had worked out a system in which Walter would call out or step back and wave to indicate when it was safe to engage the auger. On this occasion, a miscommunication occurred and Cecil thought he heard Walter call out the signal to engage the auger when in fact Walter still had his hand inside the lower cleanout door opening. When the auger was momentarily engaged by Cecil, the blades spun and pinned Walter's arm against the auger housing, badly damaging his right hand.
 
 
 4
 Deere introduced the Titan series combine in 1979. By the spring of 1982, it had ceased the manufacture and sale of combines with the same vertical unloading auger cleanout door design as the Lockley brothers' combine. The design was made safer by reducing the size of the lower cleanout door so that a hand could not fit through it and by adding a second cleanout door on the floor of the auger sump. Deere admitted at trial that this alternative design was technologically and economically feasible in 1981, but contended that there were several ways the Lockley brothers could have cleaned out their combine without having the engine running with the cleanout door open. In May 1984, Deere began a field modification program to retrofit the original-design combines with the new cleanout door design.
 
 
 5
 Walter Lockley brought a strict liability action against Deere, alleging that the combine's design rendered it defective and unreasonably dangerous, and Judy Lockley filed a separate action seeking damages for loss of consortium. Both plaintiffs asserted a claim for punitive damages based on Deere's delay in implementing the alternative cleanout door design. The two actions were consolidated for trial. Deere joined Cecil Lockley as a third-party defendant, contending that his actions were negligent and caused his brother's injury.
 
 
 6
 Near the conclusion of Deere's case, the district court decided to grant its motion for a directed verdict on the punitive damages claim. The jury returned a general verdict for Walter Lockley and awarded actual damages in the amount of $300,000, but rejected his wife's loss of consortium claim. Deere's claim against Cecil Lockley for contribution was then submitted to the jury, which specifically found that he was not negligent. The district court denied Deere's motions for judgment notwithstanding the verdict and a new trial, and these appeals followed.
 
 II.
 
 7
 A. Deere's Motion for Judgment Notwithstanding the Verdict
 
 
 8
 To recover on a strict products liability claim under Arkansas law, a plaintiff must prove that the offending product was supplied "in a defective condition which rendered it unreasonably dangerous." Ark.Code Ann. Sec. 4-86-102(a)(2) (1987). "Defective condition" is defined in the Arkansas Product Liability Act of 1979 as "a condition of a product that renders it unsafe for reasonably foreseeable use and consumption." Ark.Code Ann. Sec. 16-116-102(4) (1987). The Act defines "unreasonably dangerous" as follows:
 
 
 9
 "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product, assuming the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess. However, as to a minor, "unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by an ordinary and reasonably careful minor considering his age and intelligence.
 
 Id. Sec. 16-116-102(7).[2]
 
 10
 Deere's principal argument on appeal is that the district court should have granted its motion for judgment notwithstanding the verdict on the ground that the combine was not unreasonably dangerous as a matter of law because the auger presented an open and obvious danger. Deere bases its argument on Melton v. Deere & Co., 887 F.2d 1241 (5th Cir.1989), a strict products liability case in which the court affirmed a directed verdict against a plaintiff injured by a Deere combine in an accident almost identical to Walter Lockley's. Melton was decided under the law of Mississippi, which has adopted the doctrine of strict liability as stated in the Restatement (Second) of Torts Sec. 402A (1965),[3] and employs a "consumer expectations" test to determine when a product is "unreasonably dangerous." Id. at 1243. Adhering to the Fifth Circuit's previous interpretation of Mississippi law, the Melton court concluded that under the consumer expectations test applied in Mississippi, a product that has an open and obvious danger can never be unreasonably dangerous. Id. Based on this rule, the court held that Deere was entitled to judgment as a matter of law because "the danger of injury from the auger while the combine's engine was running was open and obvious." Id. at 1244. Deere argues that the same result must be reached under Arkansas law because the Arkansas Product Liability Act defines "unreasonably dangerous" in terms that closely follow the description of the consumer expectations test in comment i to Restatement Sec. 402A.[4]
 
 
 11
 The district court denied Deere's motion on the basis of the Arkansas Supreme Court's pronouncements regarding the open and obvious danger rule in Forrest City Mach. Works, Inc. v. Aderhold, 273 Ark. 33, 616 S.W.2d 720 (1981). The district court concluded that Aderhold rejected the rule as an absolute bar to recovery in a strict products liability action. We review this state-law ruling de novo. See Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1219, 113 L.Ed.2d 190 (1991). Aderhold involved a products liability action based on theories of negligence and strict liability. The defendant in Aderhold argued on appeal that the issue of negligence should not have been submitted to the jury because an open and obvious hazard is not unreasonably dangerous as a matter of law. The Arkansas Supreme Court began its discussion of the open and obvious danger rule by characterizing it as relieving a manufacturer of a product from the "duty to guard against or give notice of dangers which are obvious or patent to the user." 273 Ark. at 36, 616 S.W.2d at 722. The court then stated: "We have never followed this rule in Arkansas, and do not now adopt it." Id. It concluded its discussion of the rule by declaring that "[t]he open and obvious rule will not serve as a defense, as a matter of law, to all bases of liability." 273 Ark. at 37, 616 S.W.2d at 723.
 
 
 12
 Deere contends that Aderhold's rejection of the rule was limited to negligence claims and did not apply to strict liability claims. Although the decision could have been clearer on this point, we believe it is reasonable to interpret Aderhold as also rejecting the open and obvious danger rule as an automatic bar to recovery on a strict liability claim in a defective design case. Deere asserts that the Aderhold court left open the rule's effect on such a claim by stating that the rule will not be a defense as a matter of law to all bases of liability, thereby suggesting that there may be cases in which it would. However, it is apparent that this suggestion was a reference to the court's observations that a manufacturer's failure to warn of a danger does not give rise to liability when the dangerous defect is open and obvious[5] and that whether contributory negligence should preclude recovery is generally a question of fact for the jury. Id. (citing Larson Mach., Inc. v. Wallace, 268 Ark. 192, 600 S.W.2d 1 (1980)). An indication of the intended scope of the Aderhold court's decision can be found in its reliance on the reasoning used in Auburn Mach. Works Co. v. Jones, 366 So.2d 1167 (Fla.1979), where the Florida Supreme Court held that the obviousness of a product's hazard does not create an exception to liability with respect to both negligence and strict liability claims. In support of its holding, the Auburn court observed that:
 
 
 13
 The modern trend in the nation is to abandon the strict patent danger doctrine as an exception to liability and to find that the obviousness of the defect is only a factor to be considered as a mitigating defense in determining whether a defect is unreasonably dangerous and whether plaintiff used that degree of reasonable care required by the circumstances.
 
 
 14
 Id. at 1169; see also Delvaux v. Ford Motor Co., 764 F.2d 469, 474 (7th Cir.1985) (although accepted in Wisconsin, "the discredited 'open and obvious' rule" has now been "rejected by most jurisdictions"); Annotation, Products Liability: Modern Status of Rule That There Is No Liability for Patent or Obvious Dangers, 35 A.L.R. 4th 861 (1985) (collecting cases). The Aderhold court was persuaded by the reasoning that " '[t]he patent danger doctrine encourages manufacturers to be outrageous in their design, to eliminate safety devices, and to make hazards obvious.' " 273 Ark. at 37, 616 S.W.2d at 722 (quoting Auburn, 366 So.2d at 1170); see also W.P. Keeton, D. Dobbs, R. Keeton, and D. Owen, Prosser & Keeton on the Law of Torts Sec. 99 at 698 (5th ed. 1984) (precluding recovery for harm caused by open and obvious design hazard "can result in finding products to be not defective that could easily have been designed safer without great expense or effect on the benefits or functions to be served by the product"). Deere has failed to explain how application of the open and obvious danger rule would not produce this same deleterious result in both the negligence and strict liability contexts, or why the Arkansas Supreme Court would take the seemingly anomalous position of rejecting the rule in the case of negligent design claims while recognizing it as creating an exception to strict liability for patently dangerous design defects.
 
 
 15
 In light of Aderhold, we decline to accept Deere's argument that the Arkansas Product Liability Act would compel the Arkansas Supreme Court to follow the decision in Melton. We note that other jurisdictions which have adopted the theory of tort liability set forth in Restatement Sec. 402A have rejected the open and obvious danger rule as an absolute exception to strict products liability in a defective design case. See, e.g., Auburn, 366 So.2d at 1171; Linegar v. Armour of America, Inc., 909 F.2d 1150, 1154 (8th Cir.1990) (under Missouri's application of Restatement Sec. 402A's consumer expectations test, obviousness of danger or defect is material to issue whether product is unreasonably dangerous but is not conclusive); McGowne v. Challenge-Cook Bros., 672 F.2d 652, 662-64 (8th Cir.1982) (same in failure to warn case under Missouri law); Davis v. Fox River Tractor Co., 518 F.2d 481, 483-85 (10th Cir.1975) (applying Oklahoma law). Indeed, in another case involving a Deere combine accident virtually identical to Walter Lockley's, the Tenth Circuit held it was "crystal clear" that the trial court properly refused to direct a verdict for Deere under the consumer expectations test enunciated in comment i to Restatement Sec. 402A and adopted by the Kansas Supreme Court. See Wheeler v. John Deere Co., 862 F.2d 1404, 1414 (10th Cir.1988).[6]
 
 
 16
 In sum, even assuming Deere is correct that the evidence demonstrated that the combine's auger presented an open and obvious danger, the district court did not err in relying on Aderhold to deny Deere's motion for judgment notwithstanding the verdict.[7]
 
 B. Deere's Motion for a New Trial
 
 17
 Walter Lockley's complaint asserted only a strict products liability cause of action but sought recovery of both compensatory and punitive damages. Prior to trial, Deere moved to exclude evidence relating solely to punitive damages on the ground that punitive damages are not available in a strict products liability case. The district court denied this motion and informed the parties that the Lockleys would be permitted to put on evidence in support of their punitive damages claim except for proof of Deere's financial condition, Deere would have an opportunity to move for a directed verdict on the claim, and the court would then allow proof of Deere's financial condition only if it found that the Lockleys had made out a submissible case for punitive damages. Tr. of Telephone Conference at 19-20. Counsel for Deere stated that this procedure was satisfactory. Id. at 20. Near the close of Deere's case, the court granted it a directed verdict on the punitive damages issue. The court later rejected Deere's proposed cautionary instruction and gave instead its own cautionary instruction in an effort to limit the possibility of prejudice from the admission of evidence that related solely to punitive damages.
 
 
 18
 Deere argues that the district court erred in denying its motion for a new trial because the court's cautionary instruction failed to cure the prejudicial effect of evidence relevant solely to the Lockleys' punitive damages claim, which Deere contends should have been disallowed prior to trial. " '[I]n a diversity case the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law.' " Ferren v. Richards Mfg. Co., 733 F.2d 526, 528 (8th Cir.1984) (quoting Pitts v. Electro-Static Finishing, Inc., 607 F.2d 799, 802 (8th Cir.1979)). The rule in this circuit is that the district court's grant or denial of a motion for a new trial will not be reversed absent a showing of abuse of discretion. Id.
 
 
 19
 Citing no authority that supports its position, Deere asserts that a plaintiff who proceeds solely under a strict products liability theory may not seek punitive damages under Arkansas law, and therefore the district court erred from the outset of trial in allowing the introduction of evidence relevant only to punitive damages. There are apparently no Arkansas cases that speak directly to this issue.[8] However, as decisions by the Fifth and Third Circuits point out, the majority of courts addressing the issue have held that punitive damages may be recovered in cases where the plaintiff relies solely on a strict products liability theory. Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 399-401 (5th Cir.), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); Acosta v. Honda Motor Co., 717 F.2d 828, 833 & n. 6 (3d Cir.1983); see also Ferren, 733 F.2d at 529 (such recovery permitted under Missouri law); Racich v. Celotex Corp., 887 F.2d 393, 397 (2d Cir.1989) (same under New York law). In light of the prevailing rule and the absence of any sign that the Arkansas Supreme Court would not follow it, we agree with the district court's ruling that a plaintiff relying solely on a strict products liability theory may bring a claim for punitive damages under Arkansas law.
 
 
 20
 After the court directed a verdict against the Lockleys on their punitive damages claim, Deere elected not to request a mistrial on the basis of prejudice from the admission of evidence relevant solely to punitive damages. Deere's desire to have the case submitted to the jury left only the issue of how best to minimize the potential for unfair prejudice from such evidence. Deere proposed a cautionary instruction that, among other things, listed the evidence it believed the jury had to disregard because it was no longer relevant to any issue remaining in the case. We have no difficulty concluding that the district court did not err in refusing to give Deere's proposed instruction. "Unless a requested instruction is entirely correct and may be given without qualification, there is no error in refusing it." Brown v. Cedar Rapids and Iowa City Ry., 650 F.2d 159, 165 (8th Cir.1981). The instruction offered by Deere was erroneous because it attempted to instruct the jury on Deere's view of the open and obvious danger issue and directed the jury to ignore certain evidence that remained relevant.
 
 
 21
 Deere's proposed cautionary instruction required the jury to ignore the evidence of other accidents involving Titan series combines. Deere does not dispute on appeal that the other accidents occurred under circumstances substantially similar to those surrounding the accident in the instant case, which is a necessary part of the foundation for the admission of such evidence. See Lewy v. Remington Arms Co., 836 F.2d 1104, 1108 (8th Cir.1988). Rather, Deere takes the position that evidence of other accidents was clearly irrelevant to the issues before the jury. We disagree. In our opinion, the evidence was relevant to show both the existence of the alleged defective design and causation. See id. at 1108; Thomas v. Chrysler Corp., 717 F.2d 1223, 1225 (8th Cir.1983) (per curiam); Wheeler, 862 F.2d at 1408.[9]
 
 
 22
 Deere's proposed cautionary instruction also directed the jury to disregard "any issue concerning whether or not the Lockleys received the decal which Deere mailed out in 1981." Tr. at 1337. This was a reference to a program commenced by Deere in March 1981 in which it mailed a warning decal to owners of Titan series combines manufactured before January 5, 1981, with instructions to place the decal on the vertical unloading auger housing just above the lower cleanout door. The decal warned that "[t]o avoid bodily injury from turning auger, stop engine and remove start key before opening clean out doors." Plaintiffs' Exhibit 31. Contrary to the view urged by Deere, the existence and substance of the decal program constituted evidence of a subsequent remedial measure that was relevant to the strict liability issue and not precluded by Fed.R.Evid. 407. See Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788, 792-95 (8th Cir.1977).[10] More to the point, Deere's proposed instruction was incorrect because evidence that Walter and Cecil Lockley did not receive the warning decal was relevant to rebutting Deere's claim that the accident was caused by their negligence. This is especially true in light of Deere's efforts to show that despite testimony to the contrary, the operator's manual that the Lockley brothers received with their combine contained the same warning as the decal mailed out in 1981.
 
 
 23
 The cautionary instruction submitted by Deere included admonitions to disregard any contention or argument concerning Deere's failure to comply with its own design standards or its failure to recall combines of the type involved in Walter Lockley's accident. However, the portions of the record to which Deere cites in support of this part of the instruction do not show that any testimony was actually admitted on these points. Deere's instruction also directed the jury to disregard evidence that Deere annually retrieved and disassembled the experimental Titan series combines. We do not consider this particular issue because Deere abandoned it by not arguing it on appeal. See, e.g., Denniston v. Burlington N., 726 F.2d 391, 394 (8th Cir.1984). Finally, in its brief Deere identifies additional items of evidence that it asserts were relevant only to punitive damages. However, because Deere neither included these items in its proposed cautionary instruction nor objected to their absence from the court's cautionary instruction, it cannot now complain that the court erred in failing to direct the jury to ignore them. See, e.g., Robbins, 552 F.2d at 795.
 
 
 24
 We are left then with the two remaining categories of evidence listed in Deere's proposed cautionary instruction: (1) the amount of time that elapsed between February 1981 when Deere's product safety committee was first shown the alternative cleanout door design and the point in 1984 when the retrofitting kit was made available to purchasers of the original-design combines; and (2) evidence offered to suggest that Deere's testing of prototype equipment before the production of Titan series combines began in 1978 was deficient or incomplete. The forays into this latter area at trial to which Deere objects were relatively brief and not particularly damaging to Deere. The district court did not specifically incorporate either of these categories of evidence into the cautionary instruction it gave to the jury, choosing instead a more generalized approach. The court reasoned that such an approach was preferable not only because of the errors in Deere's proposed instruction, but also because the instruction would have primarily served to refresh the jury's recollection of the very material Deere contended was prejudicial. Prior to closing arguments, the court gave the following jury instruction:
 
 
 25
 The Court has concluded that only the plaintiff's strict liability claim will be submitted. Therefore, the jury will not consider the punitive damage claims or any evidence relating solely to the punitive damage claims.
 
 
 26
 The instructions I will give to you will identify the elements which Mr. and Mrs. Lockley must prove in order to prevail upon their claim that Deere and Company supplied the combine in question in a defective condition which rendered it unreasonably dangerous. During the trial evidence was admitted that related solely to the issue of possible punitive damages. In a strict liability case it is not necessary for the plaintiffs to prove any negligence or conscious fault on the part of the defendant. The focus is upon the question whether there was a defect in the combine in accordance with the Court's instructions when it was manufactured or sold. It is not possible for me at this time to identify all of the evidence which was received during this long trial but which, under the Court's rulings, is no longer relevant. But you will [be] handling the evidence properly if you only consider that evidence which logically and reasonably bears upon the issues raised by the plaintiff's strict liability claim against Deere and Company, which issues and the elements will be explained to you in the instructions after the argument of the attorneys.
 
 
 27
 Tr. at 1287-88. The court later correctly instructed the jury as to the specific elements of Walter Lockley's strict liability claim and the issues raised by those elements.
 
 
 28
 We believe that the district court's instructions as a whole did serve to help the jury focus its attention on the issues before it and to ignore the punitive damages claim that had been made. Considering the circumstances with which the court was faced and the way in which the cautionary instruction issue has come to us on appeal, we are unable to conclude that Deere has shown the court's cautionary instruction was so deficient as to render its denial of Deere's motion for a new trial an abuse of discretion.
 
 
 29
 Deere also contends that the district court improperly instructed the jury in several other respects. In particular, Deere challenges the court's verbatim use of Arkansas Model Jury Instruction (AMI) 306, which informed the jury that the word "fault" in the instructions meant "negligence and the supplying of a product in a defective condition." Tr. at 1295. Later in the charge, the jury was instructed on comparing the "fault" of Walter Lockley and the "fault" of Deere. Deere argues that the giving of AMI 306 without elaboration constituted reversible error because it could very well have misled the jury to believe that there was a negligence claim against Deere and that this claim called for the consideration of evidence irrelevant to the strict liability issue. We find no merit in this argument. "When one aspect of jury instructions is cited as error the reviewing court must examine the instructions as a whole." Denniston, 726 F.2d at 393. If the instructions considered as a whole "adequately and sufficiently state the generally applicable law, the fact that the instructions are technically imperfect or are not a model of clarity does not render the charge erroneous." Tribble v. Westinghouse Elec. Corp., 669 F.2d 1193, 1197 (8th Cir.1982), cert. denied, 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983). In this case, the instructions in their entirety made it sufficiently clear that the "fault" of Deere referred to the strict liability claim and that the only claim of negligence was the one raised by Deere in defense against Walter Lockley.
 
 
 30
 The other instructional errors alleged by Deere also provide no grounds for reversal. We disagree with Deere's contention that there was no evidence warranting the court's instruction that one of the elements of damage the jury could consider was the loss of time needed to receive necessary medical treatment. In addition to evidence regarding the frequency of necessary medical treatments, there was testimony that the value of Walter Lockley's time spent away from his farm to receive such treatments is $70 a day. Deere effectively concedes in its brief that the court's refusal to give a proffered instruction imputing the negligence of one partner to another when they are engaged in partnership business is of no consequence given the jury's finding that Cecil Lockley was not negligent. Finally, we do not review Deere's assertion that the court erred by failing to give AMI 503, an instruction on intervening proximate cause. The alleged error was not properly preserved for appeal because the record reveals that Deere did not object to the absence of the instruction before the jury retired to consider its verdict on Walter Lockley's claim. See, e.g., Grogan v. Garner, 806 F.2d 829, 837 n. 11 (8th Cir.1986).
 
 
 31
 Deere contends next that the district court erred by submitting its contribution claim against third-party defendant Cecil Lockley to the jury separate from Walter Lockley's claim against it. Deere concedes that the manner of submitting the case to the jury is largely left to the court's discretion, but asserts that the manner of submission used here denied it due process because the jury was not required to consider Cecil Lockley's fault before rendering a verdict on Walter Lockley's claim. Deere fails to explain how it possibly could have been prejudiced by this procedure in light of the jury's determination that Cecil Lockley was not negligent. Accordingly, even if the district court erred in the way it submitted the case to the jury, the error was harmless.
 
 
 32
 Deere's final assertion of error is that plaintiffs' counsel made an improper argument to the jury. Deere points to the following statement made by plaintiffs' counsel near the end of his rebuttal closing argument: "[A]re they [the Lockleys] to bear this loss under these facts, or should Deere, that's sold 39,000 of these machines at $50- to $80,000.00 apiece? You know, they grossed probably $3 billion out of these machines." Tr. of Excerpt from Rebuttal Closing Argument at 3. The district court sustained Deere's objection to this statement and immediately instructed the jury to disregard it.
 
 
 33
 The reference to the $3 billion gross sale figure was plainly improper because the court had informed counsel that such a figure could not be used to show Deere's current net worth and, in any event, had subsequently taken the issue of punitive damages from the jury altogether. However, to constitute reversible error, statements made in oral argument must be not only plainly unwarranted but also clearly injurious. City of Malden v. Union Elec. Co., 887 F.2d 157, 164 (8th Cir.1989); Vanskike v. Union Pac. R.R., 725 F.2d 1146, 1149 (8th Cir.1984). Deere has the burden of making a concrete showing of prejudice resulting from the unwarranted statement. Malden, 887 F.2d at 164; Vanskike, 725 F.2d at 1149.
 
 
 34
 After reviewing the record as a whole, we are not persuaded that Deere has shown the objectionable statement by plaintiffs' counsel was so injurious as to require a new trial. The possibility of prejudice resulting from this isolated statement was diminished by the court's immediate admonition to the jury to disregard it and by the court's later instruction that statements of the attorneys are not evidence. In addition, the admission of facts read into evidence had already informed the jury that Deere sold approximately 39,000 combines with the same lower cleanout door design at prices from $50,000 to $80,000. Furthermore, because Deere is a well-known national company, the jury was probably already aware of the wealth disparity between the parties. Cf. Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 613, 623 (8th Cir.1983) (finding such a probability reduced prejudicial effect of evidence of defendant company's financial resources). The argument advanced by Deere is that the requisite prejudice is shown by the size of the jury verdict for Walter Lockley. In addressing the same type of argument in Vanskike, we stated that "[t]he test on appeal is whether the verdict 'is so grossly excessive as to shock the conscience of this court.' " 725 F.2d at 1149 (quoting Drotzmanns, Inc. v. McGraw-Hill, Inc., 500 F.2d 830, 835 (8th Cir.1974)). We agree with the district court's conclusion that in light of the evidence of Walter Lockley's mental and physical pain and suffering, the $300,000 verdict cannot be considered grossly excessive. See id. at 1150 ("An appellate court should be extremely hesitant to overturn a verdict which includes damages for pain and suffering.").
 
 III.
 A. Punitive Damages
 
 35
 In their cross-appeal, the Lockleys' primary contention is that the district court erred in granting Deere's motion for a directed verdict on the issue of punitive damages. The Lockleys argue that they presented sufficient evidence to support a punitive damages award and request a remand for retrial on that issue.
 
 
 36
 In reviewing the sufficiency of the evidence in a diversity case, we apply the appropriate state sufficiency standard. Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir.1990). The Arkansas standard for reviewing the propriety of a directed verdict "requires that the evidence be examined most favorably to the party against whom the verdict is directed, including all reasonable inferences that could be drawn from the evidence." Ikani v. Bennett, 284 Ark. 409, 410, 682 S.W.2d 747, 748 (1985). When the record is so viewed, "a directed verdict is proper where there is no substantial evidence from which a reasonable mind could find against the [moving party] on a fact issue." Farm Bureau Mut. Ins. Co. v. Parks, 266 Ark. 454, 456, 585 S.W.2d 936, 937-38 (1979).
 
 
 37
 Applying this standard, we conclude that the district court did not err in granting a directed verdict for Deere on the punitive damages issue. Under Arkansas law, "[a]n award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred." National By-Products, Inc. v. Searcy House Moving Co., 292 Ark. 491, 493, 731 S.W.2d 194, 195 (1987). In other words, punitive damages are appropriate under Arkansas law when the plaintiff shows that the defendant "knew or should have known that its course of conduct was about to inflict injury and yet continued its activities with conscious indifference to the consequences." Mulligan v. Lederle Laboratories, 786 F.2d 859, 864 (8th Cir.1986) (citing Brown v. Missouri Pac. R.R., 703 F.2d 1050, 1052 (8th Cir.1983)). Viewed in the light most favorable to the Lockleys, the record before us contains no substantial evidence from which a reasonable jury could have inferred that Deere acted with such conscious indifference to the safety of others.
 
 
 38
 The crux of the Lockleys' punitive damages theory was that Deere failed to respond in a timely manner to protect the purchasers and users of Titan series combines after receiving reports of injuries occurring at the lower cleanout door of the vertical unloading auger. From August 1979 through December 1980, Deere received notice of four such accidents. In response, Deere began in early January 1981 to place a warning decal near the lower cleanout door of all the Titan series combines it was producing, and in March 1981 it began a program to mail the warning decal to the owners of older combines manufactured without the decal. In February 1981, Deere's product safety committee reviewed a new cleanout door design, which was then field tested before being incorporated into production combines beginning in March 1982. In the meantime, Deere had received notice of two more accidents. Deere began a field modification campaign in May 1984 to retrofit older Titan series combines with the safer cleanout door design, which could be done at a relatively low per unit cost. Between March 1982 and May 1984, Deere received notice of ten more injuries involving the original lower cleanout door, the last one being Walter Lockley's injury.
 
 
 39
 Contrary to the Lockleys' position, we believe the foregoing evidence is not sufficient to show Deere acted pursuant to a calculated decision that it would likely be cheaper to be sued and pay compensatory damages to persons injured by the Titan series combines it manufactured than to take effective steps to remedy the problem. Such a showing would have warranted a punitive damages award. See Brown, 703 F.2d at 1053. Although the evidence regarding the timeliness of Deere's responses to accident reports might very well have supported a finding of negligence, even gross negligence is not sufficient to justify punitive damages under Arkansas law. National By-Products, 292 Ark. at 494, 731 S.W.2d at 196. Therefore, the district court correctly ruled that there was insufficient evidence to submit the punitive damages issue to the jury.
 
 B. Loss of Consortium Damages
 
 40
 The jury returned a verdict awarding Judy Lockley zero damages on her loss of consortium claim. The Lockleys contend that this verdict is inadequate and seek a remand for a new trial on Judy Lockley's damages claim. However, the Lockleys did not raise the issue of the inadequacy of the verdict in a motion for a new trial or otherwise present it to the district court. Therefore, we do not reach the merits of this issue because it was not properly preserved for appellate review. See Haley v. Wyrick, 740 F.2d 12, 13 (8th Cir.1984).
 
 IV.
 
 41
 In summary, with respect to the principal issues raised by the parties on appeal, we hold that: (1) the district court correctly ruled that the open and obvious nature of a product's danger does not automatically bar recovery in a strict liability action under Arkansas law; (2) the court did not abuse its discretion in denying Deere's motion for a new trial on the basis of the alleged prejudice resulting from evidence relevant solely to punitive damages; and (3) the court properly concluded that the Lockleys did not make out a submissible case for punitive damages under Arkansas law. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable G. Thomas Eisele, Chief United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 We have previously recognized that the Act's definitions created no new causes of action, substantive rights, or liabilities. French v. Grove Mfg. Co., 656 F.2d 295, 298 (8th Cir.1981)
 
 
 [3]
 Restatement Sec. 402A provides in pertinent part that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property."
 
 
 [4]
 Comment i reads in part as follows:
 The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.
 
 
 [5]
 For this reason, the district court refused to give the Lockleys' proposed instruction that would have permitted the jury to find the combine was unreasonably dangerous because of an inadequate warning
 
 
 [6]
 In Siruta v. Hesston Corp., 232 Kan. 654, 664, 659 P.2d 799, 806-07 (1983), the Kansas Supreme Court appeared to reject application of the open and obvious danger rule in a defective design strict products liability action
 
 
 [7]
 In a footnote in its brief, Deere also asserts the evidence established as a matter of law that the negligence of either or both of the Lockley brothers was the efficient proximate cause of the accident. The district court's memorandum disposing of Deere's post-trial motions states that Deere included the issue of intervening proximate cause in its motion for directed verdict. However, the trial record does not show that Deere ever moved for a directed verdict on this ground. Accordingly, Deere was precluded from raising the sufficiency of the evidence regarding proximate cause before the district court through a motion for judgment notwithstanding the verdict, and is likewise barred from raising it on appeal. See, e.g., Myers v. Norfolk Livestock Mkt., Inc., 696 F.2d 555, 558 (8th Cir.1982). In any event, Deere has failed to identify a reason why we should reject the district court's determination that Deere was not entitled to judgment notwithstanding the verdict on the issue of intervening cause because the evidence did not establish that the alleged intervening negligent conduct was unforeseeable to it. See Chaney v. Falling Creek Metal Prods., Inc., 906 F.2d 1304, 1308 (8th Cir.1990); Rhoads v. Service Mach. Co., 329 F.Supp. 367, 374, 377-78 (E.D.Ark.1971)
 
 
 [8]
 We note, however, that even though it concerned both a strict liability and a negligence claim, Aderhold seems to suggest that if squarely faced with the issue, the Arkansas Supreme Court would reach the same result as the district court. The Aderhold court concluded that "there are valid reasons for allowing punitive damages in products liability cases," 273 Ark. at 44, 616 S.W.2d at 726, and then supported this conclusion by quoting extensively the reasoning of an Alaska Supreme Court decision which held that punitive damages are recoverable in a strict products liability action. Id. (quoting Sturm, Ruger & Co. v. Day, 594 P.2d 38, 47 (Alaska 1979), modified, 615 P.2d 621 (Alaska 1980), cert. denied, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981))
 
 
 [9]
 We also disagree with Deere to the extent it suggests that the district court abused its discretion by allowing this evidence to be presented through the live testimony of witnesses who had lost an arm or a hand, rather than requiring the Lockleys to accept Deere's proposed stipulation regarding other accidents. "[T]he favored method of presenting evidence of other accidents is through the testimony of those familiar with such accidents." Wheeler, 862 F.2d at 1408. We note further in this respect that Deere's one-sentence stipulation was almost completely devoid of probative details and that the court limited the Lockleys to only three of the eight accident victims they sought to have testify
 
 
 [10]
 We are likewise inclined to find that the bulk of the evidence regarding the field modification campaign initiated by Deere in 1984 to retrofit older Titan series combines with a safer cleanout door design was relevant to the strict liability issue. See Roth v. Black & Decker, U.S., Inc., 737 F.2d 779, 782 (8th Cir.1984); Farner v. Paccar, Inc., 562 F.2d 518, 527-28 (8th Cir.1977). However, we need not address Deere's contention that the jury should have been instructed to disregard all the field modification evidence as irrelevant because Deere neither included this evidence in its cautionary instruction nor objected to its absence from the cautionary instruction given by the district court