# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2228

_____

Leslie Grussing

*Plaintiff - Appellant*

v.

Orthopedic and Sports Medicine, Inc., A Missouri Corporation; Corey Solman, Jr., M.D.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 13, 2018
Filed: June 12, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Leslie Grussing appeals the district court's[1] denial of her motion for a new trial under Federal Rule of Civil Procedure 59(a)(1)(A), contending that the district court

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

erroneously limited her cross-examination of the defendants' expert witness and that it failed to correct defense counsel's misstatement of law during closing argument. We affirm.

## I.  Background

Dr. Corey Solman, Jr., performed arthroscopic surgery on Grussing's knee on June 26, 2014.  At her post-surgery follow-up appointment on July 9, 2014, Grussing reported swelling in her knee to Dr. Solman's physician assistant, Jason Gay.  Gay recommended that she attend physical therapy to treat her symptoms.  Dr. Solman did not examine Grussing during this visit.

Grussing returned to Dr. Solman's office on July 18, 2014, and again reported pain and swelling.  Dr. Solman aspirated Grussing's knee, draining off 60cc of synovial fluid.  Dr. Solman noticed that the fluid looked normal aside from a small amount of blood and therefore decided not to test the fluid for infection.

Grussing continued to experience pain and swelling during the following months.  She was seen by a different physician in October 2014, who aspirated Grussing's knee and sent the synovial fluid in for analysis.  The test results showed that the knee was chronically infected, as a result of which Grussing underwent a permanent total knee replacement in February 2015.

Grussing thereafter filed suit in federal district court, which had jurisdiction over these diverse parties.  Grussing alleged that Dr. Solman and Orthopedic and Sports Medicine, Inc. (collectively defendants) committed medical malpractice by failing to diagnose and treat a post-surgery infection in her knee.  The primary issue at trial was whether Dr. Solman breached the standard of care when he decided not to test the synovial fluid aspirated from Grussing's knee during her July 18, 2014, appointment.

Grussing opened her case by presenting Dr. Solman's deposition testimony, during which he acknowledged that fluid that does not appear to be cloudy can test positive for bacterial infection.

Grussing's expert witness testified that because Grussing had sudden complaints of onset pain and swelling post-surgery, the synovial fluid should have been sent in for testing, and that Dr. Solman's failure to do so breached the standard of care appropriate to the circumstances.

The defense's expert witness, Dr. Matthew Matava, disagreed and instead testified that there was no way to confirm that Grussing's knee was infected when she was examined by Dr. Solman on July 18, 2014, because Grussing did not exhibit constitutional signs of an infection—fever, redness, sweats, chills, and abnormal looking synovial fluid.  The following exchange occurred during Dr. Matava's cross-examination:

| Grussing's Counsel: | Okay.  Did [Dr. Solman] actually rule out infection by any means other than looking at the fluid? |
| --- | --- |
| Dr. Matava: | He looked at the fluid, he took the context of the patient's history or lack thereof in ruling out an infection. |
| Grussing's Counsel: | And again, that's relying on his history, not anybody else's? |
| Defense Counsel: | Your Honor, objection.  Repetitious. |
| The Court: | [Counsel], you keep going back to what and when on this fluid.  You need to quit it and move on.  You know, I mean . . . Please. |

| | |
|---|---|
| Grussing's Counsel: | Can perfectly normal looking synovial fluid be infected? |
| Defense Counsel: | Your Honor, this is repetitious as well. |
| The Court: | Sustained. |
| Grussing's Counsel: | I have not asked that question before, Your Honor. |
| The Court: | Well, you're not going to ask it now. Move on from this. No, move on. |
| Grussing's Counsel: | Your Honor, that's the core of the case. |
| The Court: | Listen, you have gone over this enough. |

Grussing's counsel ultimately moved on to a different topic.

In his testimony during the defendants' case-in-chief, Dr. Solman admitted that infection cannot be ruled out based solely on the appearance of synovial fluid. Physician assistant Gay also testified that it was "possible, but not probable" for normal looking synovial fluid to be infected.

At the close of evidence, and before closing arguments to the jury, the court read its instructions to the jury, including the following:

In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden is upon the party who relies upon any such proposition to cause you to believe that such proposition is more likely to be true than not true. In determining whether or not you believe any proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to

believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

During closing arguments, Grussing's counsel objected to defense counsel's statement regarding the burden of proof:

| | |
|---|---|
| Defense Counsel: | I want to discuss briefly just a few instructions. One of those is the burden of proof. The plaintiff has the burden of proof in this case. As indicated a moment ago, I believe the evidence supports a verdict for Dr. Solman. And we don't have an obligation under the law to prove anything. I don't believe plaintiff has met their burden. I think – but if you are just sitting there and you are not sure, then the law requires that you find in favor of the defendants. |
| | A few other instructions. One of them. |
| Grussing's Counsel: | Objection, Your Honor, this is a misstatement of the law, "not sure." |
| The Court: | Counsel. |
| Defense Counsel: | Your Honor – |
| The Court: | Follow the instructions. |
| Defense Counsel: | Yes. And the Court will give you the burden of proof, what that is. More likely than not. |

| The Court: | Well, it's in the instruction. |
|---|---|
| Defense Counsel: | Yes, Your Honor. |
| The Court: | Yes. |

The court provided the jury with written copies of the instructions prior to deliberation, following which the jury returned a verdict in favor of the defendants, and the district court denied Grussing's motion for a new trial.

## II. Discussion

"We review a district court's denial of a motion for a new trial for abuse of discretion." PFS Distribution Co. v. Raduechel, 574 F.3d 580, 589 (8th Cir. 2009).

Grussing contends that the district court committed reversible error in limiting the cross-examination of Dr. Matava regarding whether normal looking synovial fluid can nonetheless be infected. She argues that her counsel had not previously asked the question that the court deemed repetitious and that had counsel been allowed to complete his cross-examination, Dr. Matava would have testified that normal looking synovial fluid can be infected.

"[E]rror which might arise from the exclusion of evidence is harmless where the same facts are presented to the jury through other evidence." Porchia v. Design Equip. Co., 113 F.3d 877, 881 (8th Cir. 1997). Dr. Solman and physician assistant Gay both testified that it was "possible" but "not probable" for normal looking synovial fluid to test positive for infection. The jury had earlier heard Dr. Solman's deposition testimony that fluid that does not appear to be cloudy can test positive for bacterial infection, which was the precise evidence that Grussing was hoping to elicit from Dr. Matava. Any error in limiting counsel's questioning on the ground that it was repetitious was thus harmless.

We similarly reject Grussing's assertion that she should be granted a new trial because of the objected-to statement of law during closing arguments. A threshold issue is whether federal or Missouri law controls the propriety of closing arguments in this diversity case. Grussing argues that Missouri law applies. Our court has stated, however, that whether the district court erred in permitting arguments of counsel is a procedural question that should be governed by federal law. See Kostelec v. State Farm Fire and Cas. Co., 64 F.3d 1220, 1228 (8th Cir. 1995) (listing cases); see also Bank of Am., N.A. v. JB Hanna, LLC, 766 F.3d 841, 851 (8th Cir. 2014) ("The granting or denial of a new trial is a matter of procedure governed by federal law.") (internal marks and citation omitted). Federal law grants considerable discretion to the trial court to control arguments. Vanskike v. Union Pac. R. Co., 725 F.2d 1146, 1149 (8th Cir. 1984). We will reverse only if the statements made were "plainly unwarranted and clearly injurious." Id.

The district court did not abuse its discretion here. It correctly instructed the jury regarding the burden of proof before and after closing arguments; it immediately gave a curative instruction during arguments; and the correct burden of proof was properly emphasized throughout trial. We thus conclude that defense counsel's statement was not so plainly unwarranted or so injurious as to require a new trial. See City of Malden v. Union Elec. Co., 887 F.2d 157, 164-65 (8th Cir. 1989) (holding that a new trial is not warranted when the district court properly instructed the jury concerning its duty and thereby cured an improper instruction that had been previously given by defense during closing arguments); see also United States v. Voice, 622 F.3d 870, 875 (8th Cir. 2010) (holding that the district court sufficiently corrected a misstatement of governing law in closing arguments when it instructed the jury to "rely on the jury instructions that I gave you for what the law means").

The judgment is affirmed.

_____