Tatanka SAPANAJIN, Appellee,

v.

Frank GUNTER, Appellant.

Tatanka SAPANAJIN, Appellant,

v.

Frank GUNTER, Appellee.

Nos. 87–2306, 87–2404.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1988.

Decided Sept. 14, 1988.

Steven Moeller, Lincoln, Neb., for appellant.

Dana V. Baker, Lincoln, Neb., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

ARNOLD, Circuit Judge.

This case has its origins in a 1974 consent decree entered into between the Nebraska Department of Correctional Services and a group of Native American inmates. That decree provided that prison officials would make available to Native American inmates certain religious, cultural, and educational services. Tatanka SapaNajin, one of the original litigants, brought this suit in 1986 alleging that the consent decree was being violated, and, apart from the decree, that his First Amendment rights were being abridged. The District Court[1] held that the consent

decree was being complied with, but that the Department's policy of hiring an official medicine man with certain beliefs and practices contrary to the plaintiff's violated SapaNajin's First Amendment rights. *Indian Inmates of the Nebraska Penitentiary v. Gunter*, 660 F.Supp. 394 (D.Neb. 1987). On appeal the Department contests the District Court's holding on the First Amendment issue as well as its award of $100 in fees to one of the plaintiff's expert witnesses. SapaNajin appeals the Court's ruling that the consent decree was complied with. We affirm the District Court on all grounds.

■ The Department contends primarily that no evidence was presented which showed that SapaNajin's religious beliefs were significantly different from those of the official medicine man, Elmer Running. While conceding that SapaNajin's beliefs are sincere, the Department argues that the complaints he had about Elmer Running's conduct of religious ceremonies were minor. Appellant further points out that on occasion SapaNajin asked to have Running minister to him. The District Court implicitly found that there was a significant clash between SapaNajin's and Running's beliefs when it held SapaNajin's First Amendment rights were violated. This finding is not clearly erroneous. Elmer Running is a Heyoka, a member of a group described by an expert witness as "institutionalized deviants" among the Sioux Indians. Such people are "contraries" and do things backwards from most Sioux. A Heyoka medicine man, for example, will conduct the worship service backwards and behave in an irreverent manner during ceremonies. He might laugh at a funeral and say yes when he means no. Elmer Running behaved in such an unusual manner when ministering to SapaNajin. We agree with the District Court that this constitutes a sizeable difference in religious practices.

Next the Department argues that the effect of the District Court's ruling is to

---

* The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. The Hon. Warren K. Urbom, United States District Judge for the District of Nebraska.

force the state to provide a religious leader for each inmate, something the Constitution does not require. Defendant is correct in observing that each inmate is not entitled to his own personal clergyman. However, that was not the holding of the District Court. Indeed, the Court disclaimed any intention of doing such a thing, seeking instead "a middle ground" between that result "and the present practice of reportedly providing only one religious perspective." 660 F.Supp. at 400. The Court's solution of rotating a variety of different medicine men through the prison seems fair and calculated to meet the needs of the maximum number of inmates. It also has the advantage of being simple and no more expensive than the Department's former practice.

The Department goes on to argue that SapaNajin was not denied access to other medicine men. By following departmental procedures, he could bring in a medicine man of his own choosing. What the Department neglects to appreciate is that the inmate would have to pay for the cleric's travel expenses. These expenses are not inconsequential, ranging from $100 to $250 per visit. On a prison salary of $3.27 a day, SapaNajin could seldom bring in another medicine man.

■ The Department's other major contention is that the District Court erred in ordering it to pay SapaNajin's expert witness $100 in fees. Appellant claims the award is in excess of the amount allowable under 28 U.S.C. § 1821, $30.00. See *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 479 U.S. 1080, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). However, the $100 award was not made as a taxation of costs pursuant to 28 U.S.C. § 1821, but as an expense under 42 U.S.C. § 1988. The cap on fees set out in *Crawford Fitting* thus does not apply. *Id.* 107 S.Ct. at 2499 (Blackmun, J., concurring). Reasonable expenses of litigation incurred by counsel on the prevailing side can be awarded as part of the fees due under Section 1988. Such awards are not for court costs proper, but for reasonable expenses of representation. We have habitually made such awards, *e.g., Avalon*

*Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir.1982) (en banc), and other circuits have approved them. *E.g., Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); *Henry v. Webermeier*, 738 F.2d 188 (7th Cir.1984); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983).

■ In his cross-appeal, SapaNajin argues that the District Court was incorrect in holding the consent decree was not being violated. He charges that little effort has been made to maintain or improve the Native American Studies program, and that the affirmative-action hiring plan required by the decree has not been implemented.

To prevail on his contempt claim, SapaNajin has the burden of establishing by clear and convincing evidence that the decree is being violated. *Kansas City Power & Light Co. v. NLRB*, 137 F.2d 77, 79 (8th Cir.1943). We agree with the District Court's conclusion that this burden was not met. While, as the Court observed, the Native American studies program undertaken by the Department has deteriorated, what remains is still sufficient to satisfy the decree. Though the ambitious plan to hire Native Americans in the prison has also met with only limited success, attempts to attract Native American workers continue. Appellee concedes that the hiring objectives set out in the plan are merely goals, not mandates.

We have considered and reject the parties' other contentions.

Accordingly, we affirm the judgment of the District Court. We have been greatly aided in our task by its characteristically careful and thorough opinion.