Peter R. PIEKARSKI, Plaintiff,

v.

HOME OWNERS SAVINGS BANK, F.S.B., f/k/a Western Minnesota Federal Savings and Loan Association, f/k/a Western Minnesota Savings and Loan Association, f/k/a Fergus Falls Savings and Loan Association; Knutson Mortgage Corporation, a Delaware corporation; Home Owners Federal Savings and Loan Association, a federally chartered savings and loan association; and M. Gene Donley, Defendants.

Civ. No. 4-90-661.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 30, 1991.

William P. Luther, Luther, Ballenthin & Carruthers, Minneapolis, Minn., for plaintiff.

Charles A. Mays and Lawrence P. Schaefer, Leonard, Street and Deinard, Minneapolis, Minn., for defendants.

## ORDER

DEVITT, District Judge.

### Introduction

The damages phase of this wrongful termination from employment action was tried to the court over three days commencing November 5, 1990. On December 6, 1990, the court issued its findings and order on damages, concluding that plaintiff was entitled to receive $155,000.00 as compensatory and $25,000.00 as punitive damages from defendants.[1]

---

1. The facts and procedural history of this litiga-  tion are detailed in the court's findings and

This matter is presently before the court upon plaintiff's motion for an award of $215,535.07 in attorneys' fees and costs pursuant to Minn.Stat. § 181.935(a).[2] For the reasons set forth below, the court awards plaintiff attorneys' fees and costs, though in an amount less than requested.[3]

Discussion

The court may grant plaintiff's motion for attorneys' fees only if a statute or contractual provision authorizes such an award. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Jacobs v. Rosemount Dodge—Winnebago South,* 310 N.W.2d 71, 79 (Minn.1981). Plaintiff contends that an award of attorneys' fees is appropriate under Minn.Stat. § 181.935(a). Defendants oppose plaintiff's motion, arguing that the statute relied upon by plaintiff does not apply and that no other applicable statute authorizes an award of attorneys' fees. In the alternative, defendants argue that the court should award plaintiff significantly less than he seeks to recover.

Minn.Stat. § 181.935(a) provides:

In addition to any remedies otherwise provided by law, an employee injured by a violation of section 181.932 may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees, and may receive such injunctive and other equitable relief as determined by the court.

order on damages and the appendix thereto, and need not be repeated here. *See Piekarski v. Home Owners Savings Bank, F.S.B., et al.,* 752 F.Supp. 1451 (D.Minn.1990).

**2.** This order addresses costs and fees incurred through December 18, 1990.

**3.** In the interest of efficiency, the state district court's *Findings of Fact, Conclusions of Law and Order for Judgment* and supporting *Memorandum* will be cited simply as "Findings" and "Memorandum."

**4.** The legislature amended Minn.Stat. § 181.932, subd. 1(c), in April, 1988, to read:
    (c) The employee refuses an employer's order to perform an action that the employee has an

Defendants advance essentially three grounds to support their contention that Minn.Stat. § 181.935(a) is inapplicable. First, the state district court, in determining liability, did not cite Minn.Stat. § 181.932. Second, according to defendants, the evidence submitted during the liability phase was insufficient to establish a violation of Minn.Stat. § 181.932. Finally, defendants argue that the nature of this court's damage award demonstrates that Minn.Stat. § 181.935(a) does not apply to this action.

■ The court is not persuaded by these arguments and finds that Minn.Stat. § 181.935(a) applies to this case. Defendants correctly point out that the state district court found defendants liable on plaintiff's retaliatory discharge claim without citing Minn.Stat. § 181.932, and that plaintiff may recover attorneys' fees under section 181.935(a) only if he was "injured by a violation of [Minn.Stat. §] 181.932." Minn.Stat. § 181.935(a). Section 181.932 provides, in pertinent part:

> **Subdivision 1. Prohibited action.** An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (c) the employee refuses to participate in any activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law.[4]

objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.
*See* 1988 Minn.Laws ch. 659, § 2. Evidently, the parties dispute which of the above versions of Minn.Stat. § 181.932, subd. 1(c) applies, though neither party details the substance of this dispute. That plaintiff was wrongfully terminated in January, 1988, prior to the date the amended version was passed, suggests strongly to this court that the pre–1988 version of Minn. Stat. § 181.932(c) applies. *See* Minn.Stat. § 645.02. Minnesota statutes are not to be given retroactive effect "unless clearly and manifestly so intended by the legislature." Minn. Stat. § 645.21.

That the state district court did not cite Minn.Stat. § 181.932 does not perforce indicate that the state court grounded liability exclusively upon the common law of wrongful discharge. At the close of evidence during the liability phase of this action, the state district court submitted a verdict form to the advisory jury. With respect to plaintiff's retaliatory discharge claim, the form completed by the jury reads, in part:

2. RETALIATORY DISCHARGE:

\*     \*     \*     \*     \*     \*

B. Did the defendants terminate plaintiff's employment because the plaintiff refused to participate in any activity that he in good faith believed violated any state or federal law or rule or regulation?

YES _X_ NO ___

C. Did plaintiff inform his employer of his reason for the refusal?

YES _X_ NO ___

Findings, at 3. The state district court adopted the advisory jury's findings as its own. The language of these questions mirrors the language of Minn.Stat. § 181.932, Subd. 1(c), and indicates convincingly that the state district court found defendants liable, at least in part, upon plaintiff's statutory cause of action. Indeed, defendants acknowledged that "yes" answers to the above two questions would amount to a finding by the jury that both versions of Minn.Stat. § 181.932, subd. 1(c) had been violated.[5]

■ Defendants' argument that the evidence adduced at the liability phase is insufficient to sustain liability under Minn. Stat. § 181.932 may be addressed briefly. The state district court held specifically that sufficient evidence supported the jury's findings. Memorandum, at 19. This court is in a poor position to find fault with the state district court's conclusions concerning liability under Minn.Stat. § 181.932 as the state district court is profoundly more familiar with the evidence relevant to liability. However, upon reviewing the state court's thorough memorandum and much of the liability trial record, this court is satisfied that the state court's conclusions concerning liability under Minn.Stat. § 181.932 are amply supported.[6]

Defendants correctly point out that Minn.Stat. §§ 181.932 and 181.935(a) originally became effective in May, 1987 and are not to be applied retroactively. *See Rice v. Target Stores,* 677 F.Supp. 608, 616 (D.Minn.1988). This court awarded damages to plaintiff for retaliatory wage discrimination commencing January, 1984. From this defendants conclude that plaintiff's " 'retaliatory employment action' claim must sound in common law and cannot be used as a predicate for an award of

---

5. During a conference absent the jury, the following colloquy occurred concerning the form of the verdict questions to be submitted to the jury:

> THE COURT: Just so we are clear, what we are talking about is Minnesota Statute 181.932 Subd. 1(c) and Subd. C(6). That statute was changed effective '88, and what we had originally done is drafted question 2B to ask the jurors whether or not there had been a violation of that statute as it exi[s]ted before '88, and question 2C to determine whether or not there had been a violation of the statute as it had been amended and was in effect after 1988. And what we have done here is by the two questions we have agreed on, 2B and 2C have indicated that if they answer both questions yes, then we will acknowledge that there has been a violation of subdivision 1(c) prior to '88 and after '88.
> MR. SCHAEFER [*counsel for defendants*]: We would acknowledge the jury made that finding.

6. The state district court specifically found that plaintiff was terminated, at least in part, for his refusal to commit perjury during trial of the matter concerning Donley's parents:

> Piekarski was subpoenaed to testify in favor of the Gerhardsons and he informed Donley of his being subpoenaed. When Donley saw the subpoena he gave Piekarski a stern look before turning his back and walking away without saying a word. Based upon prior discussions with Donley concerning this matter, and the reaction of Donley to the subpoena, Piekarski, in good faith, believed that Donley was warning him that he had better not testify against Donley's parents. The jury in the present case found that Piekarski was justified in his belief that Donley wanted him to commit perjury or avoid the subpoena.

Memorandum, at 21–22. The state district court went on to conclude that plaintiff was terminated "... in retaliation for testimony in the trial of Donley's parents." Memorandum, at 23.

attorneys' fees." This conclusion is only partially correct. As Minn.Stat. § 181.932 may not be applied retroactively, defendants' liability for wage discrimination from January, 1984 through the effective date of Minn.Stat. § 181.932 must be grounded in common law.[7] However, defendants wrongfully discharged plaintiff in January, 1988, well after the effective date of the statute, and defendants may be held liable under Minn.Stat. §§ 181.932 and 181.-935 for any retaliatory employment action taken after the statute's effective date. That this court awarded damages for acts occurring prior to the effective date does not compel the conclusion that liability is grounded exclusively in common law.

■ Defendants argue that plaintiff's status as a prevailing party does not, *ipso facto,* justify an award of attorneys' fees, and that Minn.Stat. § 181.935(a) affords this court discretion in deciding whether to award plaintiff attorneys' fees and costs. Specifically, defendants point to Minn.Stat. § 181.145, subd. 4(b), which provides that employers who lose disputes with commissioned salespersons over wages "... *shall* pay reasonable attorneys' fees." (emphasis supplied). According to defendants, had the legislature intended that the fee provision in section 181.935 be mandatory, it would have used similarly commanding language. The parties have not cited, and the court is unable to find, any authority interpreting Minn.Stat. § 181.935(a). However, other cases construing attorney fee provisions containing language identical to Minn.Stat. § 181.935 make it clear that once a plaintiff establishes injury, he is entitled to recover attorneys' fees and

costs. *Bucko v. First Minnesota Savings Bank, F.S.B.,* 452 N.W.2d 244, 252 (Minn. Ct.App.1990) ("Because .. respondents established injury under the statute, they are entitled to costs, including attorney fees, under Minn.Stat. § 181.75, subd. 4."); *see Liess v. Lindemyer,* 354 N.W.2d 556, 557 (Minn.Ct.App.1984); *Freeman v. Q Petroleum Corporation,* 417 N.W.2d 617, 618 (Minn.1988); *Love v. Amsler,* 441 N.W.2d 555, 560 (Minn.Ct.App.1989). The court concludes, therefore, that an award of attorneys' fees under Minn.Stat. § 181.935(a) is appropriate.[8]

■ The court next determines the amount of the fee award. As noted earlier, research has revealed no authority analyzing Minn.Stat. § 181.935(a). In the context of at least two other statutes, however, the Minnesota Supreme Court has reviewed fee awards under the analysis set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 628–30 (Minn.1988) (Minnesota Human Rights Act, Minn.Stat. § 363.14, subd. 3.); *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 540–43 (Minn. 1986) (act regulating security transactions in Minnesota, Minn.Stat. § 80A.23.). The *Hensley* analysis thus appears appropriate here.

*Hensley* first requires the court to determine the "lodestar" figure. "This figure is determined by multiplying the 'number of hours reasonably expended on the litigation ... by a reasonable hourly rate.'" *Anderson,* 417 N.W.2d at 628; *quoting, Hensley,* 461 U.S. at 433, 103 S.Ct.

---

**7.** In its findings and order on damages, this court assumed, without deciding, that a two-year statute of limitations applied to plaintiff's wage discrimination claim and held that plaintiff's claim survived under the doctrine of continuing violation. The doctrine of continuing violation "serve[s] to toll otherwise applicable time bar limitations," but does not allow retroactive application of a statute to conduct occurring prior to its effective date. *Melani, et al. v. Board of Higher Education of City of New York,* No. 73 Civ. 5434, 1976 Westlaw 589 at *5 (S.D.N. Y.1976).

**8.** Defendants suggest that, in awarding attorneys' fees, this court look to a separate provi-

sion of chapter 181, Minn.Stat. § 181.956, outlining the remedies available to employees injured by violations of the "Drug and Alcohol Testing in the Workplace" statute. Section 181.-956 permits an award of attorneys' fees to prevailing plaintiffs only in the presence of a "knowing and reckless" violation. Minn.Stat. § 181.956, subd. 2. The court does not agree that the knowing and reckless standard applies to actions under Minn.Stat. § 181.935(a). Had the legislature intended that this higher standard apply, it would have expressed as much within the text of section 181.935(a).

at 1939.[9] The court must exclude from the lodestar calculation duplicative or inordinate hours. *Specialized Tours, Inc.,* 392 N.W.2d at 542. In ascertaining a "reasonable hourly rate," the court is to consider "the ordinary fee for similar work in the community." *Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 459 (8th Cir. 1983) (citations omitted). The court must also consider a number of criteria that may justify either an increase or decrease in the fee award. *Id.,* 461 U.S. at 430, 103 S.Ct. at 1937, n. 3. Chief among these is the factor of the " 'results obtained.' " *Id.,* 461 U.S. at 434, 103 S.Ct. at 1940. In addressing this factor, the court must disallow fees for hours spent in the unsuccessful pursuit of claims that are " 'distinct in all respects' " from the successful claims. *Catlett v. Missouri Highway and Transportation Commission,* 828 F.2d 1260, 1270 (8th Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988); *citing, Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

■ Here, defendants present several bases for reducing the fee award requested by plaintiff. First, defendants contend that plaintiff incurred substantial fees pursuing substantive claims unrelated to the retaliatory discharge claim. Specifically, defendants focus upon plaintiff's breach of contract, intentional interference with contract, misrepresentation, and age discrimination claims. Plaintiff, in response, argues that these claims are substantially related. Plaintiff prevailed upon his breach of contract, intentional interference with contract, and misrepresentation claims.[10] Further, the court finds that these claims, including plaintiff's age discrimination claim, are not "distinct in all respects" from plaintiff's retaliatory discharge claim. Each claim, though containing certain discrete elements, required discovery and analysis of a "common core of facts" surrounding plaintiff's termination from employment, and the success of each claim depended, in large part, upon plaintiff's ability to show that defendants' adverse employment decisions stemmed from defendant M. Gene Donley's improper motives.

■ Second, defendants contend that any fee award should be reduced because plaintiff unsuccessfully pursued remand motions and opposed removals and transfer motions distinct from the substantive merits of this action. As noted earlier, this case, though a "run-of-the-mill wrongful termination from employment action," journeyed among state and federal courts in Minneapolis, St. Paul, and Fergus Falls, Minnesota to federal district court in Washington, D.C. prior to alighting before this court. *See Piekarski v. Home Owners Savings Bank, et al.,* 743 F.Supp. 38, 39–41, 43 (D.D.C.1990). Plaintiff did not suffer defeat at every turn in his efforts at obtaining venue in Fergus Falls as he prevailed upon his first remand motion before this court in June, 1990. However, plaintiff's subsequent efforts at resisting defendants' removal and transfer motions proved altogether fruitless. The court finds plaintiff's remand efforts generally unsuccessful and entirely distinct from plaintiff's substantive claims. *See, Main Line Paving Co. v. Board of Education, School District of Philadelphia,* No. 89–0821 Civ., 1990 Westlaw 31697 at *6–*7 (E.D.Pa.1990) (time spent litigating unsuccessful remand motions that are distinct from substantive claim would be eliminated from fee award calculation). Upon reviewing the time records submitted by plaintiff, the court concludes that plaintiff's counsel devoted approximately 533.9 hours toward

---

**9.** The party seeking a fee award bears the burden of establishing entitlement to the amount requested and documenting the hours expended and hourly rates. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

**10.** That plaintiff prevailed upon these claims is significant as the *Hensley* analysis seems to preclude fee recovery for time devoted to the pursuit of claims that are both unrelated and, at the same time, unsuccessful.

plaintiff's remand motions.[11] The lodestar will be accordingly reduced.

■ Defendants argue that opposing counsel's requested hourly fee of $165.00 exceeds by $40.00 rates normally charged in the Fergus Falls, Minnesota area by attorneys of similar experience and skill.[12] Plaintiff responds that the reasonableness of attorney William P. Luther's ("Luther") fee should be judged relative to the Minneapolis legal community. Attorney Luther, a former federal court of appeals law clerk, is a partner in the Minneapolis firm of Luther, Ballenthin & Carruthers and has over twenty years experience in the practice of law. This case required significant time and presented several challenging substantive issues. Even assuming, *arguendo*, that Fergus Falls is the appropriate "community" for determining the market rate,[13] defendants offer no evidence that attorneys of Luther's caliber performing work of this type would receive $125.00 rather than $165.00 per hour. *See McDonald v. Armontrout*, 860 F.2d 1456, 1459–60 (8th Cir.1988). The court thus finds no reason to reduce Luther's requested hourly rate.

Based upon the foregoing, the court arrives at the following:

| William Luther | 686.5 hours | × | $165 | = | $113,272.50 |
|---|---|---|---|---|---|
| Kristine Kaplan | 388.4 hours | × | $80 | = | $ 31,072.00 |
| Law clerk | 112.2 hours | × | $50 | = | $ 5,610.00 |
| Legal assistant | 58 hours | × | $45 | = | $ 2,610.00 |
| | | | | | $152,564.50 |

■ Plaintiff seeks a multiplier of at least fifty percent on his fee request. The fee applicant bears the burden of proving that such an adjustment is necessary. *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). Other than conclusory statements, plaintiff offers no support for an upward adjustment in the fee award. Further, the court has considered the twelve criteria set forth in *Hensley*, 461 U.S. at 430, 103 S.Ct. at 1937, n. 3, and concludes that none of the factors justifies an upward adjustment in the fee award. The time spent by plaintiff's counsel, reduced by the number of hours devoted to plaintiff's unsuccessful remand motions, and the hourly rates set forth above reflect an appropriate basis for the fee award.

■ Plaintiff contends he is entitled to recover $22,212.32 in costs associated with the prosecution of his case. Defendant argues that many of the costs sought by plaintiff are not recoverable. The parties have cited no authority, and the court has found none, addressing the types of costs which may be recovered under Minn.Stat. § 181.935(a). Both parties rely upon *International Woodworkers of America, AFL–CIO v. Donovan*, 792 F.2d 762 (9th Cir. 1986), which recognizes that fee statutes generally provide only for the recovery of "costs that are ordinarily billed to a client." *Id.*, 792 F.2d at 767; *see United States v.*

11. In particular, the hours billed to plaintiff in this regard include the following: Luther—89.9 hours; associate attorney Kristine I. Legler Kaplan—90.3 hours; law clerk—341 hours; and legal assistant—12.7 hours.

12. Defendants do not appear to challenge the rates requested for the associate attorney, law clerk, or legal assistant who served on this case.

13. Generally, the reasonableness of an attorney's hourly rate is governed by rates in the " 'locality where the case is heard' * * * unless out of town counsel brings to the case unavailable necessary skill and expertise." *Corbett v. Wild West Enterprises*, 713 F.Supp. 1360, 1364 (D.Nev.1989), *citing, Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). Here, a significant portion of the litigation was heard in St. Paul as well as Fergus Falls. Further, plaintiff represents that it would have been difficult to obtain conflict-free representation in Fergus Falls.

*Boeing Company, Inc.,* 747 F.Supp. 319, 323 (E.D.Va.1990) (key question in considering what is proper under fee shifting statutes is what would normally be billed to the client), *citing Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989). Such costs normally include, for example, travel for attorneys, postage, telephone costs, and expert witness fees. *International Woodworkers,* 792 F.2d at 767. Here, plaintiff seeks to recover $9148.86 in costs directly incurred by he and his wife. Plaintiff has cited no authority, and the court has found none, holding that expenses incurred directly by a party (as opposed to the party's attorney) may be recovered. *See Sapanajin v. Gunter,* 857 F.2d 463, 465 (8th Cir.1988) ("Reasonable expenses of litigation *incurred by counsel* on the prevailing side can be awarded as part of the fees due under Section 1988." (emphasis supplied)). The court will subtract these from plaintiff's request for costs.

The court also finds it appropriate to deduct from plaintiff's request those costs incurred in the prosecution of plaintiff's remand motions. As noted earlier, these motions proved unsuccessful and were entirely distinct from plaintiff's substantive claims. Unfortunately, the court has no accurate means to assess precisely which costs were incurred solely for the purpose of prosecuting the remand motions. Earlier, the court reduced plaintiff's fee request from $193,322.75 to $152,-564.50, a reduction of approximately 21.1 percent. The court finds this percentage relevant in determining a suitable reduction from plaintiff's cost request. While this method may appear somewhat arbitrary, other courts have reduced claims for fees and costs by a percentage rather than agonizing over incalculable details. *See, e.g., Daggett v. Kimmelman,* 811 F.2d 793, 797–98 (3rd Cir.1987). Plaintiff's request for costs will also be reduced 21.1 percent.

### Conclusion

Based upon all the files, briefs, and arguments of counsel,

IT IS ORDERED that:

1. Defendants Home Owners Savings Bank, F.S.B., Knutson Mortgage Corporation, Home Owners Federal Savings and Loan Association, and M. Gene Donley are liable to plaintiff in the sum of $152,564.50 as for attorneys' fees;

2. Defendants Home Owners Savings Bank, F.S.B., Knutson Mortgage Corporation, Home Owners Federal Savings and Loan Association, and M. Gene Donley are liable to plaintiff in the sum of $10,307.07 as for costs.

LET JUDGMENT BE ENTERED ACCORDINGLY.