Kurt BAUFIELD, Plaintiff,

v.

SAFELITE GLASS CORPORATION, Defendant.

Civ. No. 3–91–214.

United States District Court,
D. Minnesota,
Third Division.

May 10, 1993.

Lawrence R. Altman, Schermer & Altman, Minneapolis, MN, for plaintiff.

Richard A. Ross, Mary M. Krakow, and Kimberly J. Nordby, Fredrikson & Byron, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

The above-entitled action came on for trial before the undersigned and a jury between March 8 and March 12, 1993.[1] On March 15, 1993, the jury returned a verdict finding that defendant Safelite Glass Corporation ("Safelite") terminated plaintiff Kurt Baufield in violation of Minn.Stat. § 181.932 (1990) (the "Whistleblower Act"), and was liable for def-

---

1. At the close of plaintiff's case-in-chief, defendant Safelite Glass Corporation moved for a "directed verdict" on all issues. Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, the Court granted that motion with respect to plaintiff Kurt Baufield's claim for punitive damages and dismissed that claim against defendant; the motion was denied in all other respects. A separate order was filed with respect to the punitive damages claim.

amation. By its order dated March 16, 1993, this Court concluded that Safelite had engaged in reprisal discrimination against Baufield in violation of the Minnesota Human Rights Act. Minn.Stat. § 363.03, subd. 7 ("MHRA").[2] As damages, the jury awarded Baufield the sum of $201,000 for Safelite's violation of the Whistleblower Act and $50,000 for defamation. In its March 16, 1993 order, the Court held that the jury's award of damages for Safelite's violation of the Whistleblower Act precluded Baufield from recovering additional damages for Safelite's violation of MHRA.

Now before the Court are (1) Safelite's Motion for Judgment as a Matter of Law Following a Jury Verdict or Alternatively, A New Trial, pursuant to Fed.R.Civ.P. 50(b), 59(a), and (2) Baufield's Post–Trial Motions for an Order (a) awarding prejudgment interest, (b) multiplying the damages award, and (c) granting his application for costs and attorney's fees.

### Discussion

### I. Safelite's Post–Trial Motions

#### A. Motion for Judgment As a Matter of Law

The entry of judgment as a matter of law is governed by Rule 50 of the Federal Rules of Civil Procedure. Rule 50 permits a party to move the court, during a trial by jury, for a judgment as a matter of law.[3] A motion for judgment may be granted as a matter of law where "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed.R.Civ.P. 50(a)(1). Where a motion for judgment is for any reason not granted, the court is deemed to submit the action to the jury subject to a later determination of the legal questions raised by the motion and the party seeking judgment as a matter of law may renew the motion not later than ten (10) days after entry of judgment. Fed.R.Civ.P. 50(b).

■ Following a jury verdict, judgment as a matter of law is proper only when a reasonable jury could not have reached the result on the evidence presented. See Western American, Inc. v. Aetna Cas. & Sur. Co., 915 F.2d 1181, 1183 (8th Cir.1990); City of Omaha Employees Betterment Ass'n v. Omaha, 883 F.2d 650, 651 (8th Cir.1989). The standard that must be met before a jury's verdict may be set aside is a "rigorous" one, Western American, 915 F.2d at 1183, and the court must deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence. Id.

■ In passing on a motion for judgment as a matter of law, the court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. Id. (citing Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985)). The court, however, is not to accord the prevailing party "the benefit of unreasonable inferences," Marcoux v. Van Wyk, 572 F.2d 651, 653 (8th Cir.1978), cert. dismissed, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), nor may it deny a motion where the verdict is supported by a "mere scintilla" of evidence or by mere "speculation." City of Omaha, 883 F.2d at 651–52.

Having scrutinized Safelite's contentions in support of its motion and the evidence presented at trial, the Court concludes that Baufield introduced sufficient evidence to support his defamation and Whistleblower Act claims.[4] Assuming as true all facts support-

---

**2.** Acting in an advisory capacity as to Baufield's MHRA claim, the jury found that Safelite had engaged in reprisal against Baufield.

**3.** Prior to December 1, 1991, Rule 50(a) motions were entitled "motions for a directed verdict" and Rule 50(b) motions were entitled "motions for judgment notwithstanding the verdict."

**4.** Safelite seeks judgment as a matter of law on all three of Baufield's claims. Because this Court was the finder of fact on Baufield's MHRA claim—the jury acted only in an advisory capacity—Safelite's motion at the close of Baufield's case-in-chief was deemed a Motion for Judgment on Partial Findings pursuant to Fed.R.Civ.P. 52(c). Rule 52(c) was added in 1991 and paral-

ing Baufield which the evidence tended to prove, and giving him the benefit of all reasonable inferences that may be drawn from the facts proved, Baufield presented evidence establishing each of the essential elements of those claims. The issues involved in this case demanded that the fact finder weigh the credibility of witnesses and balance conflicting evidence concerning the parties' actions. Safelite's versions of the facts were presented at trial and again in support of the instant motions, yet its view was met by Baufield's evidence. Accordingly, it was for the jury to assess the evidence and reach a verdict.[5]

■■■ The Court further concludes that Safelite's argument concerning Baufield's defamation claim is not supported by Minnesota's law of defamation. A statement is defamatory if it *tends* to harm the plaintiff's reputation or lower him in the estimation of the community. Whether a plaintiff was in fact harmed by defamatory statements becomes essential to a claim of defamation only if the alleged defamatory statement is not defamatory per se. If a statement is defamatory per se, harm is presumed.

■ A statement is defamatory per se if it imputes serious sexual misconduct to the subject of the statement. *See Anderson v. Kammeier,* 262 N.W.2d 366, 372 (Minn.1977); Restatement (Second) of Torts § 574. Baufield presented evidence from which a jury could find that the Ricely's statements imputed serious sexual misconduct to Baufield. Accordingly, Baufield's defamation claim was not dependent on showing that his reputation was actually harmed.

### B.  Motion for New Trial

■ In a motion for a new trial, the court's primary purpose is to prevent the verdict from working an injustice. *Leichihman v. Pickwick, Int'l,* 814 F.2d 1263, 1266 (8th Cir.) (*"Pickwick II"*), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987), aff'g 589 F.Supp. 831 (D.Minn.1984) (*"Pickwick I"*). In other words, "[t]he court must be motivated by more than the fact that it would have come to a different conclusion had it been the trier of fact. The court must feel that the jury reached a seriously erroneous result in spite of the clear weight of the evidence." *Id.* (quoting *Pickwick I,* 589 F.Supp. at 834 (citation omitted)). Accordingly, the standard is whether the verdict is against the weight of the evidence. *Pickwick II,* 814 F.2d at 1267. In assessing a new trial motion, the court may consider all the evidence adduced at trial and weigh that evidence for itself. *Id.* at 1266.

Safelite's motion for a new trial has three components. First, as to each of Baufield's three claims, Safelite contends that the jury's verdict is against the weight of the evidence.[6] The Court cannot agree. The standard of review is not whether the court or counsel would have reached a different conclusion; rather, the question is whether the jury's verdict has a basis in the evidentiary record. The Court concludes that the jury's findings with respect to Baufield's defamation and Whistleblower Act claims are amply supported by the evidence and will not be disturbed. The Court further concludes that Safelite has not shown that the Court should either reopen the judgment or grant a new trial on Baufield's MHRA claim. *See* Fed. R.Civ.P. 59(a). Finally, the Court notes that the jury's advisory verdict on Baufield's MHRA claim supports the Court's ultimate findings on that claim. *See Pickwick I,* 589 F.Supp. at 834.

---

lels Fed.R.Civ.P. 50(a). However, because Rule 52 does not contain a provision which parallels Rule 50(b), Safelite's instant motion on the MHRA claim is deemed a Motion to Amend Findings under Fed.R.Civ.P. 52(b). The purpose of a Rule 52(b) motion is to "allow the trial court to correct manifest errors of law or fact." *Clark v. Nix,* 578 F.Supp. 1515, 1516 (S.D.Iowa 1984), *modified sub nom. Clark v. Brewer,* 776 F.2d 226 (8th Cir.1985).

5. For the same reasons, Safelite's motion for amended findings and judgment on Baufield's MHRA claim will be denied.

6. As with its motion for judgment as a matter of law *supra,* Part I.A, Safelite fails to distinguish Baufield's defamation and Whistleblower Act claims, in which the jury was the fact finder, and his MHRA claim, in which the Court was the fact finder. Nevertheless, Fed.R.Civ.P. 59(a) permits motions for a new trial in cases tried to the Court.

Second, Safelite contends that the Court's refusal to instruct the jury that "a communication cannot be defamatory if it was first communicated by the party that is the subject of the communication," was an error of law warranting a new trial. This statement was not part of Safelite's proposed injury instructions; rather, it was a statement in Safelite's trial memorandum. The Court initially included the preceding statement in a draft of its Instructions of Law which were circulated to counsel prior to the charge conference. Thereafter, the Court determined, over Safelite's objection, that the statement was not supported by governing law and would not be included in its Instructions.

█ A new trial may be appropriate under Fed.R.Civ.P. 59 if the court erred in instructing the jury as to the applicable law. *Aderans Co. v. Jablonski*, 787 F.Supp. 882, 885 (D.Minn.1992). In the present case, Safelite has not shown that the Court's refusal to give the requested instruction presented the jury with an erroneous view of the law of defamation.

█ Third, Safelite contends that Baufield's counsel's closing arguments improperly appealed to the jury's passion and sympathy and were so prejudicial that its right to a fair trial was violated. In support of this ground, Safelite points to the fact that during his closing argument Baufield's counsel (1) referred to Safelite as, among other things, the "Mafia" and a "corporate goon squad," (2) opined that the Safelite executive who terminated Baufield, Thomas Lopienski, did not appear at trial because Baufield's termination was not important enough, and (3) referred to the damages allegedly suffered by Baufield's father and wife.

Notwithstanding Safelite's concession that it did not object to any of the statements now complained of, (Def's Mem.Supp. New Trial, at 18 n. 5), a new trial would be warranted if the statements Safelite identifies were "plainly unwarranted and clearly injurious." *Vanskike v. Union Pac. R. Co.*, 725 F.2d 1146, 1149 (8th Cir.1984); *Pearce v. Cornerstone Clinic For Women*, 938 F.2d 855, 859 (8th Cir.1991); *see McWhorter v. City of Birmingham*, 906 F.2d 674, 677–78 (11th Cir. 1990) (holding that failure to make a contemporaneous objection to improper argument is not fatal where "the interest of substantial justice is at stake"). After considering Safelite's arguments and the statements upon which it relies, this Court finds that none of Baufield's counsel's statements was so prejudicial as to require a new trial in this case. In reaching this conclusion, the Court finds appropriate the Eighth Circuit's statement in *Vanskike:*

> While the court finds oratorical exaggeration and provocative remarks in the closing argument of counsel ..., there is nothing in the record which strikes the court as plainly unwarranted or completely beyond the province of counsel in attempting to impress certain views on the mind of the jury. This court holds the fundamental belief that jurors are intelligent, discerning people and that they can usually sort out emotional and passionate arguments and follow what the court tells them to do.

725 F.2d at 1149.

### C. Motion for Remittitur

Finally, Safelite argues that if it is not granted either judgment as a matter of law or a new trial, it is entitled to a remittitur on the damages awarded to Baufield for its violation of the Whistleblower Act and MHRA. Safelite relies on all the arguments previously discussed herein, as well as the ground that the damages awarded were excessive and not supported by the evidence.

█ Granting a remittitur is within the trial court's discretion and should be granted only when the verdict is "so grossly excessive as to shock the court's conscience." *American Business Interiors v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir.1986). In making this determination, the court is guided by the law of the forum state. *Vanskike*, 725 F.2d at 1150. "The damage award may not exceed that which the highest court of the state whose substantive law gives rise to the claim." *Id.* at 1151. In Minnesota, a remittitur may be granted when an excessive verdict appears to have been given under the influence of passion and prejudice or when the damages awarded are not justified by the

evidence. *Kwapien v. Starr*, 400 N.W.2d 179, 184 (Minn.Ct.App.1987).

■ After a careful review of Minnesota damages awards and in light of the evidence presented at trial, this Court cannot conclude that the jury's award of (1) $80,000 in damages for lost future earnings, and (2) $75,000 in damages for monetary expenses, impairment of reputation, mental anguish and emotional suffering is so grossly excessive that a remittitur is warranted. Accordingly, Safelite's request for a remittitur is denied.

## II. Baufield's Post–Trial Motions

### A. Baufield's Motion for Prejudgment Interest

Pursuant to Minn.Stat. § 549.09, subd. 1(b), Baufield seeks an award of prejudgment interest in the amount of $17,841.47, applicable to his damages for impairment of reputation, mental anguish, defamation, and lost wages.[7] Baufield is not seeking prejudgment interest on his damages for lost future wages. *See id.* § 549.09, subd. 1(b)(3).

■ Minn.Stat. § 549.09, subd. 1(b) provides that "[e]xcept as otherwise provided by contract or allowed by law, preverdict, . . . interest on pecuniary damages" may be recovered on judgments. The interest is calculated on the amount of the prevailing party's damages and is awarded to compensate for the loss of the use of money during the pendency of litigation. *Anoka Orthopaedic Assoc. v. Mutschler*, 773 F.Supp. 158, 170 n. 20 (D.Minn.1991).

■ Although pre-judgment interest is available on a final judgment and is calculated according to Minn.Stat. § 549.09, subd. 1(b), the threshold issue is whether an award of prejudgment interest is proper. Minn. Stat. § 549.09, subd. 1(b)(1)–(5) sets forth specific judgments for which preverdict interest may not be awarded. In addition, it has long been the law in Minnesota that

prejudgment interest is available on a final judgment only where the damages claim is liquidated, or if unliquidated, where the damages are "readily ascertainable by computation and not dependent upon contingencies or jury discretion." *Dear v. Minneapolis Fire Dept. Relief Ass'n*, 481 N.W.2d 69, 73 (Minn. Ct.App.1992), *aff'd as modified*, 485 N.W.2d 145 (Minn.1992) (mem.). Conversely,

> [i]t is also the rule in Minnesota that prejudgment interest is not allowed on unliquidated claims that are not readily ascertainable by computation or by reference to generally recognized standards, or where the amount of the claim is dependent in whole or in part upon the discretion of the jury.

*Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734, 743 (Minn.Ct.App.1985) (quoting *Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d 169, 189 (8th Cir.1971)); *see e.g., Frumkin v. Mayo Clinic*, 965 F.2d 620, 627 (8th Cir.1992) (noting that "purely emotional damages" are not "pecuniary" damages under Minnesota law); *Bonhiver v. Graff*, 311 Minn. 111, 248 N.W.2d 291, 306 (1978) (holding that damages for "injury to reputation" are not subject to award of prejudgment interest).[8] In contrast, prejudgment interest is appropriate on damages awarded to Baufield for economic loss under his MHRA claim. *See Evans v. Ford Motor Co.*, 768 F.Supp. 1318, 1327 (D.Minn.), *amendment denied*, 784 F.Supp. 618 (D.Minn.1991); *State by Cooper v. Mower County Soc. Serv.*, 434 N.W.2d 494, 500 (Minn.Ct.App.1989).

■ Accordingly, prejudgment interest will be awarded on $46,000 in damages awarded for the wages Baufield lost as a result of his termination, but not on his damages for mental anguish, defamation, or impairment of reputation. The amounts awarded as damages for those claims were wholly dependent upon the jury's discretion. *Cf. Noble*, 374 N.W.2d at 743.

---

7. Safelite contends that if the Court awards Baufield the entire amount of prejudgment interest that he seeks, the proper amount is $17,710.26.

8. At the May 7, 1993 hearing on the instant motions, counsel for Baufield cited the Eighth Circuit's decision in *Frumkin* and the Minnesota Supreme Court's decision in *Hodder v. Goodyear*

*Tire & Rubber Co.*, 426 N.W.2d 826 (Minn.1988), as authority for his assertion that preverdict interest may be awarded on damages for impairment to reputation and emotional suffering. The Court has reviewed those decisions; neither decision warrants altering the conclusion herein.

In summary, the Court determines that Baufield is entitled to prejudgment interest on his lost wages in the amount of $4,171.84.[9]

### B. Baufield's Motion to Multiply MHRA Damages

Under MHRA, courts may exercise their discretion and award successful plaintiffs "compensatory damages in an amount up to three times their actual damages sustained." Minn.Stat. § 363.071, subd. 2. Multiplied damages are permitted so as to provide victims of discrimination with "full and adequate compensation" in cases where the amount of actual damages proved do not alone achieve that result. *Melsha v. Wickes Cos.*, 459 N.W.2d 707, 709 (Minn.Ct.App. 1990). In determining whether and to what extent actual damages should be multiplied, an employer's degree of culpability need not be considered. *Covenant of the Visitation School v. Continental Cas. Co.*, 707 F.Supp. 412, 416 (D.Minn.1989).

The Court finds that Baufield has been adequately compensated by the award of damages for lost wages, lost future wages, mental suffering and prejudgment interest. Accordingly, the damages awarded him will not be multiplied.

### C. Application for Attorney's Fees and Costs

#### 1. Attorney's Fees

Whenever a court is faced with a request for attorney's fees, it must start with the "American Rule." *Gopher Oil Co. v. Union Oil Co.*, 757 F.Supp. 998, 1005 (D.Minn.1991), *remanded in part*, 955 F.2d 519 (8th Cir.1992). The American Rule is that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is an express statutory authorization to the contrary. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Both MHRA and the Whistleblower Act provide for the recovery of reasonable costs, including attorney's fees. Minn.Stat. § 363.14, subd. 3; *id.* § 181.935. Both statutes follow the analysis and calculation methods set forth in *Hensley. Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 628 (Minn.1988) (MHRA); *Piekarski v. Home Owners Sav. Bank, FSB*, 755 F.Supp. 859, 863 (D.Minn.1991).

*Hensley* first requires the court to determine the "lodestar" figure. This figure is determined by multiplying the "number of hours reasonably expended on the litigation ... by a reasonable hourly rate." 461 U.S. at 433, 103 S.Ct. at 1939. This task necessitates excluding from the lodestar calculation all hours which were not "reasonably expended," *id.* at 434, 103 S.Ct. at 1939, those which are duplicative, and those which are based upon incomplete or imprecise billing records. *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991); *Piekarski*, 755 F.Supp. at 864.

In addition, *Hensley* provides that a plaintiff may recover attorney's fees only if he is a "prevailing party." *See* Minn.Stat. § 363.14, subd. 3. In calculating the number of hours "reasonably expended on the litigation," the court should, if possible, exclude any hours expended on claims for which plaintiff did not gain relief. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943 (if an unsuccessful claim is "distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee"). Similarly, fees incurred in pursuing claims for which attorney's fees are not recoverable must be excluded from the lodestar figure.

Baufield's fee petition requests that his attorneys be compensated for 672.5 hours spent working on the case at rates ranging from $185.00 to $200.00 per hour. Baufield also requests that his attorneys be compensated for 61.25 hours spent by a legal assistant and a law clerk at the rate of $60.00 per hour. Multiplying the hours by the respective rates yields a lodestar amount of $129,064.

---

9. The calculation of prejudgment interest is based upon the accounting standard of 360 days, rather than 365 days in a calendar year.

Baufield's counsel has submitted an accounting of time charges in this case. This accounting purports to exclude all hours spent working on his defamation claim, for which attorney fees are not recoverable, and his unsuccessful claims for punitive damages. In addition, Baufield does not request any enhancement of the lodestar amount.

Finally, Baufield acknowledges that the rates contained in his application are those currently charged by his counsel, but he contends that using current rates is proper compensation for the fact that no fees were paid to his counsel until the end of the case. *Gopher Oil Co.*, 757 F.Supp. at 1010.

Safelite responds that Baufield's application for reimbursement for fees and costs is inaccurate and should be reduced. Safelite identifies several entries which it alleges are either not reimbursable or too vague and ambiguous to support reimbursement. As examples of the inaccuracies contained in the accounting, Safelite specifically identifies hours relating to (1) the depositions of Patsy Engle, Earl Reed, John Matlick and Wayne Smith, and (2) Baufield's motion to amend his complaint. Safelite seeks to have the Court reduce the overall award by the total amount of the improper entries, or in the alternative, to award Baufield fifty percent (50%) of the requested amount.

■ In ascertaining a "reasonable hourly rate," the court is to consider the "ordinary fee for similar work in the community." *Gopher Oil*, 757 F.Supp. at 1008. Baufield's counsel have provided the Court with their normal hourly rates: $185.00 and $200.00 per hour for attorneys and $60.00 per hour for paralegals and law clerks. The Court is familiar with the ordinary fees charged for work performed in this case and concludes that Baufield's counsel's billing rate is a rea-

sonable rate for purposes of calculating the lodestar amount. As Safelite does not contest the rates set forth in the application, including Baufield's counsel's use of current rates, this Court accepts the use of such rates as a proper adjustment for delay in payment. *See Gopher Oil*, 757 F.Supp. at 1010.

Although the rates contained in the application are reasonable, the Court concludes that Baufield's fee application contains an excessive calculation of the hours "reasonably spent" in pursuit of his Whistleblower Act and MHRA claims. The Court has identified several hours which were spent working on either the defamation claim or the motion to amend the complaint; neither of these activities reasonably related to the claims on which he prevailed. Baufield's counsels' failure to exclude these hours indicates to the Court that the accounting upon which Baufield relies may have other errors which the Court has not identified.[10] In addition, the Court believes that several of the entries, e.g., those entries entitled "conference with client" are so vague and imprecise that this Court cannot determine that they are reasonably related to the claims for which Baufield can recover attorney's fees.

■ "The fee applicant has the burden of establishing entitlement to an award and documenting the appropriate hours expended....". *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Where the court finds that the required showing has not been made, the court may exercise its discretion and reduce the lodestar amount to the proper level, or direct the applicant to submit additional records in support of the application. *H.J., Inc.*, 925 F.2d at 260. If the court decides to reduce the lode star amount, the court may

---

**10.** On May 3, 1993, counsel for Baufield submitted a revised Plaintiff's Exhibit No. 3B, which contains a summary of (1) the hours spent by each of the persons who expended effort on the case, (2) the total fees generated by each person. Counsel for Baufield represent that the total number of hours in the summary includes "billed and unbilled" time, but that the total dollar amount of fees set forth includes only fees charged for billed hours. Upon a review of Exhibit 3B, the Court finds that the totals presented in same match the total presented in the

accounting of time and charges (Plf's Exh. No. 3A). As a result, the Court can only conclude that hours classified as "unbilled" are those which were spent on claims for which Baufield cannot recover fees.

By the Court's calculations, Baufield's counsel have attributed only approximately 25 hours of time to claims for which Baufield cannot recover attorney's fees. This amount is low and supports the Court's conclusion that Baufield's accounting of hours is high.

eliminate the hours spent on unrelated, non-compensable claims, or if the records are too imprecise to conduct a meaningful review, simply reduce the total award. *Id.*

■ The vast majority of the hours contained in Baufield's accounting were reasonably expended in pursuit of Baufield's MHRA and Whistleblower Act claims. Most of the entries are specific as to activity and identify the parties involved therein. In addition, the bulk of the hours expended relate to task-intensive activities such as preparing for and conducting depositions and participating in the trial. Further, Baufield's recovery on both his MHRA and Whistleblower Act claims further supports a conclusion that most of the hours in the application were reasonably expended in the litigation.

Nevertheless, the Court concludes that a reduction of fifteen percent (15%) in the lodestar amount is necessary to properly account for any inadequate and imprecise documentation, as well as Baufield's counsels' failure to exclude all hours spent on other claims.[11] Although the reduction affects the total lodestar amount, the 15% reduction follows from the Court's conclusions as to the proper number of hours to eliminate. Accordingly, the proper lodestar amount is $109,704.40.

The lodestar amount is *"presumed"* to be the reasonable fee to which counsel is entitled. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (emphasis added). Although upward adjustments of the lodestar figure are still permissible, "such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' and on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (quoting *Blum,* 465 U.S. at 898–1001, 104 S.Ct. at 1548–1550), *on reh'g,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Baufield has not sought an upward adjustment to the lodestar and the Court concludes that no

such adjustment is warranted. Accordingly, Baufield's Application for an Award of Attorney's Fees will be granted in the amount of $109,704.40.

### 2. Costs

Baufield has identified $11,820.77 in costs associated with his prosecution of his case. Safelite argues that this figure includes costs for which Baufield may not seek recovery, to wit: (1) expenses which were incurred directly by Baufield; (2) expenses relating to his defamation claims; and (3) expenses incurred by a members of another law firm to attend trial and read the John Matlick's deposition.

Baufield may recover those "costs that are ordinarily billed to the client." *International Woodworkers of America, AFL–CIO v. Donovan,* 792 F.2d 762, 767 (9th Cir.1985); *see Sapanajin v. Gunter,* 857 F.2d 463, 465 (8th Cir.1988). Such costs do not include costs directly incurred by the client during the course of the litigation. *Piekarski,* 755 F.Supp. at 866. The Court concludes that a fifteen percent (15%) reduction in the amount sought to be reimbursed will achieve a proper allocation of costs for which Baufield may seek recovery. Accordingly, Baufield's Application for an Award of Costs will be granted in the amount of $10,047.65.

In summary Plaintiff's Application for an Award of Costs and Reasonable Attorney's Fees will be granted in the amount of $119,752.05.

### Conclusion

Based upon the files, records, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that:

1. Defendant Safelite Glass, Inc.'s Motion for Judgment As A Matter of Law (Doc. No. 62) is DENIED;

2. Defendant's Motion for New Trial (Doc. No. 62) is DENIED;

3. Defendant's Motion for Remittitur (Doc. No. 62) is DENIED;

---

11. In their opposing memorandum, Safelite proposed that the Court reduce the hours contained in Baufield's application by the number of hours determined to not have been "reasonably expended" in the litigation, or in the alternative, reduce the total hours by 50%. The Court agrees with Safelite that a general percentage reduction is appropriate; however, the Court concludes that 15%, rather than 50%, is the correct percentage.

4. Plaintiff Kurt Baufield's Application for A Trebling of Actual Damages (Doc. No. 65) is DENIED;

5. Plaintiff's Application for an Award of Prejudgment Interest (Doc. No. 65) is GRANTED in the amount of four thousand one hundred seventy-one dollars and eighty-four cents ($4,171.84); and

6. Plaintiff's Application for an Award of Costs and Attorney's Fees (Doc. No. 72) is GRANTED in the amount of one hundred and nineteen thousand seven hundred fifty-two dollars and five cents ($119,752.05).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**